**STATE of Missouri, Respondent,**

v.

**John Leonard PUGHE, Appellant.**

**No. 51510.**

Supreme Court of Missouri,
Division No. 1.

May 11, 1966.

Motion for Rehearing or for Transfer to Court
En Banc Denied June 13, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Carl R. Gaertner, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Commodore M. Combs, Jr., Kansas City, for appellant.

HOUSER, Commissioner.

John Leonard Pughe, convicted by a jury of robbery in the first degree, § 560.-120, V.A.M.S., and sentenced to 8 years imprisonment, has appealed from the judgment of conviction.

■ The first question is whether there was a fatal, material variance between the charge in the information that appellant took $17 from Gussie Goebel, "the money and personal property of said Gussie Goebel," and the state's proof that the $17 taken belonged to Western Union Telegraph Company. The robbery occurred at an office of the telegraph company. At the time of the robbery Gussie Goebel was an employee of the company, in sole charge of the office. The robber entered the office, handed Mrs. Goebel a note threatening to endanger her life by the use of "nitro" and demanding that she "hand over the cash." He had an article in his hand which looked like a tube. Under this compulsion she opened the cash drawer and the robber took the company money therefrom and fled. It is immaterial to the validity of the information whether Mrs. Goebel was the owner or the legal custodian merely of the $17 taken in the robbery. State v. Huffman, Mo.Sup., 238 S.W. 430. The ownership of the property taken may be laid in the one in possession of the property at the time of the robbery, whether he be clerk, servant or other bailee. State v. Johnstone, Mo.Sup., 335 S.W.2d 199, 203. "The gravamen of the offense consists in the taking by violence, or by putting in fear, the money or property of another from one who was at the time in the lawful possession of the same. * * * The words of the statute, therefore, defining those from whom the unlawful taking of property shall constitute robbery, may be disregarded as words of description rather than of limitation. * * *" McCarthy v. Eidson, Mo.Sup., 262 S.W.2d 52, 53, 54.

■ The next question is the legal sufficiency of the testimony given by Mrs. Goebel purporting to identify appellant as the culprit. The robber was in the telegraph office in the presence of Mrs. Goebel for a period of from two to four minutes, and was within two to three feet of Mrs. Goebel when he reached for the money. There is no evidence that he was masked. She had ample opportunity to observe him, and did observe many details, including the fact that he carried in his hand an article which was brown and looked like a tube. Mrs. Goebel gave the police a description of the man (five feet eleven inches in height, about 160 pounds in weight, wearing a blue shirt and dark trousers). She told the police that she would be able to identify him by his features and his height. Later Mrs. Goebel picked appellant out of a lineup of three men at the police station, after the three stepped forward one at a time and gave their names and addresses. She immediately identified appellant as the robber and signed a statement positively identifying him "by his physical build and speech." She also saw him at the preliminary hearing. At the trial she pointed him out in the courtroom. She testified that she was "sure" he was the man; that she would know and would not forget anyone who came in and robbed and frightened her as badly as he did. She identified him not only by the means she used at the police station but also by "his facial features." She had noticed "a peculiar kind of frown when he

came into the office," a frown which appellant had when he was in the lineup. Aside from the confession, in which appellant identified himself as the robber, the foregoing evidence was sufficient to submit to the jury the question of the identity of appellant as the robber. The accuracy and credibility of the testimony of Mrs. Goebel was for the jury. State v. Clark, Mo.Sup., 331 S.W.2d 588, 590 [3].

Appellant's principal complaints are that the court erred in permitting the police officers to recite to the jury the incriminating oral admissions made by appellant and refer to his signed confession, and in failing to submit to the jury by appropriate instructions the question whether his confessions were given voluntarily.

Preliminary to the admission of the self-incriminating evidence the court held a hearing in the absence of the jury to determine whether the confessions should be admitted in evidence. At that hearing Detective Reed of the Kansas City Police Department testified as follows: On the night after the robbery Reed questioned appellant at police headquarters. Sergeant Schump, who was also on duty at the time, was in and out of the room from time to time, but Reed and appellant were alone in the questioning room most of the time. Reed started talking to appellant at 11:30 p. m. Appellant was in the room for three hours. Reed began questioning appellant with reference to an attempted burglary of the Jefferson Supermarket. After talking to him for fifteen minutes or so Reed started to prepare a typewritten statement with reference to the supermarket matter. At that time Reed informed appellant that he did not "have to make any kind of statement at all and that it was his right to consult with anyone he chose." Reed also advised appellant of his right to counsel. Appellant did not at any time make a request to have counsel. Appellant told Reed that he did not want to "live like this—the way he had been living" and that he "wanted to get it off his chest." Appellant was "very willing"

to give Reed a statement and tell him "all about this and some other things." After the first fifteen minutes of questioning about the supermarket matter, at about 11:-45 p. m., and before Reed had mentioned the robbery at Western Union, appellant volunteered the information that he had committed the robbery at Western Union. Reed inquired as to the details. Reed then went to the police records, pulled out the reports of the Western Union robbery, and checked the information appellant gave him with the information contained in the police reports. The details were identical. Reed then prepared a written statement with reference to the Western Union robbery. Before doing so Reed again advised appellant of his constitutional rights; told him that he did not have to make a statement at all in writing, and that he had a right to counsel. Reed asked him if he wanted to call anyone and he said "No," that there was no one he wanted to call. At no time did Reed make any threat or any kind of a gesture toward appellant or have any bodily contact with him. After the written confession was signed and at about 2:30 a. m. appellant was conducted to his cell.

Officer Linhart of the police department testified at the hearing from which the jury was excluded that the day after appellant gave his written confession he interrogated appellant for possibly an hour, during which appellant "orally admitted the Western Union robbery." It was a "voluntary admission."

At that same hearing (outside the hearing of the jury) appellant testified that he was picked up for investigation and questioned; that when the questioning by Detective Reed began appellant asked Reed if he did not have any rights and if he could not call an attorney or someone to help him; that he was a stranger in town and would like to talk to someone. He said Reed answered that there was no one he could talk to; that he was a stranger in this town and had no rights. The questioning

lasted for two or three hours, beginning late at night. Appellant testified that Reed kept questioning him and asked him to sign a "statement to the robbery" and told him he was going to make a statement "one way or the other"; that appellant told Reed he wasn't going to sign anything; that he was not guilty; that finally at 2 a. m. Reed "got tired of questioning" him "and he hit [appellant] in the face with his open hand * * * with a pretty good force and" appellant "signed a statement when he drew back." Appellant stated that he agreed to sign the statement because he "didn't want to get beat up." He swore that when he was arrested at 8 p. m. the previous night he was threatened, knocked down, kicked two or three times in the legs and back, and beaten by police officers and handcuffed. He said he later had brownish bruises on his side, right lower back and legs as a result.

At the conclusion of the hearing appellant's counsel orally moved for the suppression of the statements made to the officers. That motion was overruled. The court stated that "observing the defendant and his demeanor * * * leaves no question in my mind whatsoever what the true facts were with respect to any voluntariness of any statement made by the defendant," called the jury back, and permitted the state to proceed in the hearing of the jury to introduce in evidence the testimony of the officers with reference to the written and oral confessions of appellant. Officer Reed testified before the jury that while talking to appellant about another matter appellant volunteered the information that he had robbed the Western Union office, and recited the details of what appellant had told him about the commission of the Western Union robbery. He further testified that appellant signed a waiver of search and recounted how he searched appellant's room and discovered a Schick razor wrapped in a piece of brown paper; that the interrogation commenced at 11:30 p. m. and lasted until 2:30 a. m.; that what appellant said was reduced to writing and signed by him;

that before the questioning started at 11:30 p. m. appellant had been detained approximately an hour. The previous testimony of Reed that he informed appellant of his constitutional rights was not brought out before the jury. Officer Linhart testified before the jury that fifteen or twenty minutes after appellant was identified at the lineup (on the day after the written confession was signed) Linhart had an hour's conversation with appellant in which the latter asked to make a long distance telephone call and stated that he would "tell everything." The call was made, after which appellant orally admitted that he "did it." Linhart testified that at that time he did not advise appellant that he had a right to remain silent and a right to counsel. Appellant did not take the stand and testify in the presence of the jury. Neither he nor any other witness gave any testimony before the jury that appellant had been coerced mentally or physically prior to making the confessions and defendant did not repeat before the jury the testimony given at the hearing before the judge that his constitutional rights were not accorded him.

On the question whether the court should have admitted the evidence of appellant's oral confessions and the references to his written confession, appellant cites People v. Dorado, 40 Cal.Rptr. 264, 394 P.2d 952; Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Greenwell v. United States, 119 U.S. App.D.C. 43, 336 F.2d 962; Lee v. United States, 5 Cir., 322 F.2d 770; Ashcraft v. State of Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192. Appellant contends that the officers should not have been permitted to testify concerning appellant's oral and written confessions because (1) appellant was questioned for three hours without having been charged with a criminal offense, and (2) he was not accorded the assistance of counsel. We find no error on either ground.

There is no statute or common law rule prohibiting the holding of a per-

son arrested for questioning for a period of three hours and the fact that he is so held, without any charge having been filed against him, does not in and of itself, as a matter of law, render inadmissible as involuntary a confession obtained during that time. Detention for considerably longer periods of time has been held insufficient to invalidate a confession. For instance, a prisoner's confession is not rendered involuntary as a matter of law by the fact that a peace officer violates a statute by holding a person in excess of the time provided by law (twenty hours, § 544.170, V.A.M.S.) without charging him with a criminal offense. State v. Bridges, Mo. Sup., 349 S.W.2d 214 [3], and cases cited l. c. 218. See State v. Keeble, Mo.Sup., 399 S.W.2d 118 [13] and numerous cases cited l. c. 122, in which in proceedings under Criminal Rule 27.26, V.A.M.R., it has been held that judgments of conviction are not per se invalidated by the fact that a prisoner is held without bail, without an attorney, and without the use of a telephone, for over twenty hours, in violation of § 544.170 and Criminal Rule 29.05.

■ Nor does the fact that a person arrested for questioning does not have counsel at the police station render inadmissible the testimony of police officers testifying to incriminating statements made during interrogation. "We have never held that the lack of an attorney when a defendant is interrogated and a statement is taken renders the confession invalid per se." State v. Davis, Mo.Sup., 400 S.W.2d 141, 149 [16]. This is not a case where the prisoner was uninformed as to his right to consult with counsel and his right to remain silent, or in which there was no waiver of these rights, or in which mental or physical coercion was employed. This is a case similar in these respects to State v. Boykins, Mo.Sup., 399 S.W.2d 70. The record plainly shows that prior to the time he confessed his guilt appellant was informed of his right to remain silent and of his right to counsel and was given an opportunity to request counsel, but declined to avail himself of the right and opportunity; that no mental or physical coercion was employed, and that he confessed voluntarily during the course of an interrogation as to another matter. The trial judge disbelieved appellant's testimony to the contrary, and on this review we reach the same conclusion. The record further shows that while the interrogation as to the attempted burglary at the supermarket was under way and before any mention was made of robbery at the Western Union office—after appellant had been advised of his right to make no statement and to consult with others, including counsel—appellant made no request for an opportunity to consult with counsel; chose not to remain silent but elected to talk freely, and to clear his conscience volunteered the information that he committed the Western Union robbery. The one factor which distinguishes this case from those cited by appellant: this appellant was effectively warned of his constitutional right to counsel and his right to remain silent and is shown to have competently and intelligently waived those rights. *Ashcraft* is not persuasive; the uncontradicted evidence there showed that he was held incommunicado for thirty-six hours without rest or sleep, subject to continuing interrogation under circumstances inherently coercive.

■ The next question is whether it was incumbent on the court to charge the jury by an appropriate instruction on the question of the voluntary or involuntary character of the confessions. It is urged that mental coercion should be found from the fact that appellant was questioned for three hours. The truth is that he confessed within fifteen minutes after the questioning began. We declare as a matter of law that questioning an arrested person for fifteen minutes under the conditions surrounding appellant does not amount to unduly prolonged detention constituting force and duress. See State v. Higdon, 356 Mo. 1058, 204 S.W.2d 754, where the holding of defendant for forty hours under similar conditions was sustained. In the case

here for review there was *no evidence before the jury* of any physical or mental abuse of the appellant during the three-hour period. Appellant, however, apparently contends that in determining whether the jury should be instructed on the voluntary or involuntary character of the confession the trial court should take into consideration all of the evidence, both that given before the judge in the absence of the jury and that subsequently given before judge and jury. In support of this thesis appellant cites State v. Cochran, 356 Mo. 778, 203 S.W.2d 707, which in turn cites State v. Ramsey, 355 Mo. 720, 197 S.W.2d 949. These cases do not so hold. They stand for the proposition that the *appellate* court should hold confessions inadmissible as a matter of law if upon consideration of all of the evidence in the transcript (both that given before the judge in the absence of the jury and that given before the judge and jury) it is conclusively shown that the confessions were involuntary. True enough, it is said in State v. Cochran, supra, 203 S.W.2d, 1. c. 708, that "[i]f the evidence is conflicting * * * [on the question whether the confession was given voluntarily] it is a question for the jury." (Our brackets.) This refers, necessarily, to the *evidence before the jury*. The evidence of physical and mental coercion was not before the jury. Appellant testified to physical and mental coercion before the judge in the private hearing, but the judge did not believe the testimony. Appellant, having failed to convince the trial judge of the truth of these charges, had another chance—an opportunity to present the same evidence to the jury and have the jury pass upon the question. The Missouri practice is described in State v. Washington, Mo.Sup., 399 S.W.2d 109 [12]. If appellant had testified to the same facts before the jury appellant would have been entitled to an appropriate instruction on the voluntary or involuntary character of the confession, upon his request, but he elected not to take the stand and deprived the jury of an opportunity to hear this evidence. Furthermore, appellant made no re-

quest of the court to instruct on voluntariness. The voluntariness of a confession is a collateral issue and an instruction on this subject is not required as a part of the law of the case. State v. Ramsey, 355 Mo. 720, 197 S.W.2d 949, 957 [12]; State v. Higdon, 356 Mo. 1058, 204 S.W.2d 754, 755 [4]. Not having offered any evidence before the jury on the issue of voluntariness of the incriminating statements, and not having requested an instruction on the question, appellant is in no position to complain that the court failed to submit the issue to the jury. State v. Ramsey, supra, 197 S. W.2d, 1. c. 957 [13]. In State v. Hershon, 329 Mo. 469, 485, 45 S.W.2d 60, 65 [1–4], defendant testified before the judge but outside the hearing of the jury to facts showing that he had been mistreated by the police, and denied making a written confession, but did not take the stand, and there was no such testimony before the jury. It was held that there was no necessity of instructing the jury to disregard the alleged confession if it was involuntary, the court stating, 45 S.W.2d, 1. c. 65: "The court is not required, indeed it would not be permitted to predicate instructions upon testimony given in chambers in the absence of the jury at a hearing upon a preliminary question for the guidance of the court alone. Although defendant testified at the private hearing that he had been brutally treated at police headquarters and, in this testimony, denied that he made or signed the confession, neither he nor any one else so testified before the jury. In the circumstances the confession was prima facie voluntary."

Finally, appellant makes the point that "[i]t was prejudicial error for the court to permit a single body sitting as a jury to pass upon both the issue of voluntariness without instruction and the guilt or innocence of the accused." This is an attempt to invoke the rule of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, but we are not here presented with the question decided in that case for the reason that the issue of voluntariness was not sub-

mitted to or passed upon by the jury, and no evidence on the issue went to the jury in this case, as appellant concedes in his motion for new trial and brief. This point contradicts and is inconsistent with appellant's other point, in which he complains of the failure of the court to instruct on the issue.

Examination of the record as required by Criminal Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

WELBORN, C., not sitting.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.