**STATE of Missouri, Respondent,**

**v.**

**Thomas Paul GOWER, Appellant.**

**No. 52420.**

Supreme Court of Missouri,
Division No. 1.

July 10, 1967.

Motion to Modify Opinion or to Transfer to
Court en Banc Denied Sept. 11, 1967.

---

Norman H. Anderson, Atty. Gen., Jefferson City, Thomas J. O'Brien, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, Jerry L. Redfern, Springfield, for appellant.

HENLEY, Presiding Judge.

By information alleging a prior felony conviction defendant was charged with burglary, second degree, and stealing. Sections 560.070 and 560.156 (all references to sections of statutes are to RSMo 1959 and V.A.M.S.). A jury found him guilty as charged. His motion for new trial was overruled and he was sentenced by the court to imprisonment in the custody of the Department of Corrections for a term of seven years for burglary and seven years for stealing, the sentences to run concurrently. Sections 556.280, 560.095, 560.110. Defendant appeals.

There is no contention that the evidence is not sufficient to sustain the judgment of conviction; hence, a brief summary will suffice. On Monday, November 15, 1965, at about 11:00 P.M., defendant and one Jerry Keltner broke into and entered the Little Reno Club located on a highway by-pass between Highways 166 and 266 in Greene county; there they tore open and took $76.25 in coins from a cigarette vending machine. They were caught inside the Club. Edgar Walters, owner, and his wife live in a house approximately 100 feet east of the Club building; they had retired for the evening a few minutes before the burglary occurred. Mrs. Walters saw an automobile drive up to the building; it stopped, its lights were turned off, and two men got out and went to the building. By the time Mr. Walters could get outside his home the defendant and his companion had entered the Club; Walters could hear them tearing open a cigarette machine. Mrs. Walters immediately called the sheriff's office and reported the burglary in progress. Within a few minutes sheriff's deputies Jerry McCafferty and Ken Nobles arrived at the scene. Nobles stayed with the police car while McCafferty, with a gun in one hand and a flashlight in the other, walked into the Club building. As he entered he saw defendant and Keltner standing behind the bar; he called to them to stand still and raise their hands; instead, "They * * * ducked down behind the bar * * *." Walking closer to the bar, McCafferty identified himself as a police officer and told them he was armed; a voice behind the bar said: "I'm armed, too, and I'll shoot * * *;" at this instant, McCafferty saw "* * * a hand sticking around the end of the bar with a gun in it." He immediately stepped back and as he did so a shot was fired, missing him. The officer fired one shot in the direction from which the shot had been fired at him; he heard "* * * a very strange laugh * * *" and then a hand from behind the bar placed a .22 caliber H & R revolver on the bar top and "* * * pushed it down the bar * * *;" defendant slowly followed that hand upwards and "* * * stood up with his hands in the air." Keltner remained hidden. McCafferty arrested defendant and took him out to Officer Nobles at the police car. Nobles was searching defendant when Lieutenant Ronald Wilcox of the Greene county sheriff's office drove up and took over from Nobles the search of defendant's person. Shortly thereafter officer McCaf-

ferty and Lieutenant Wilcox entered the building and found Keltner hiding on a shelf below and behind the bar. The Club had not opened for business that day; earlier in the evening Mr. Walters had checked and found all outside entrances to the Club building securely locked. Defendant did not testify.

Two points are briefed: (1) error in refusing to strike testimony of Lieutenant Wilcox in which he related an incriminating statement involuntarily made by defendant while under arrest; (2) error in the court, rather than the jury, assessing defendant's punishment, because the court had not first complied with the provisions of § 556.280.

Lieutenant Wilcox testified that when he arrived at the scene defendant was standing in "spread eagle" fashion leaning against the police car and officer Nobles was searching him; that he took over from Nobles the search of defendant's person; that during this search defendant "swung on me and I socked him and then fought him to the ground." He further testified that he questioned defendant " * * * with regard to firing a shot [at officer McCafferty] * * * in the Little Reno Club * * *;" that defendant said: "Yes, I fired the gun, but I was scared and it went off accidentally." Before Wilcox could give this answer, defendant objected on the ground that the inquiry was " * * * purely inflammatory and having nothing to do with the crime being tried * * *." The objection was overruled. Six other questions were asked Wilcox on the same general subject, and then, in a conference at the Bench, counsel for defendant made further objection to testimony regarding defendant's admission that he fired the shot. The substance of this objection was that he had been assured before trial by counsel for the state that there was not " * * * any confession in regard to any of the charges or in any of the matters connected with this * * *;" that this evidence of defendant's admission to Wilcox that he was the one who had fired the shot at McCafferty

came as a complete surprise to counsel and that had he known of it prior to trial he would have moved to suppress the admission, because defendant had " * * * been brutally beaten * * * by Wilcox before defendant made the 'confession.' " Counsel for the state admitted that defense counsel had inquired before trial whether the state had a confession, but he implied that the inquiry was solely whether there was a confession to the burglary and not to any particular incriminating event or statement made during the burglary or defendant's apprehension. He further implied that he had told counsel that the state had no confession to "the *burglary*," but that he had not told counsel that "He [defendant] did confess that he fired a shot * * *" at McCafferty in the building, although he had knowledge of that confession at the time. The court said: "I am going to overrule Mr. Daniel's [counsel for defendant] objection at this time, but I am going to certainly have to go into the legal end of this further * * *."

At the close of this witness's testimony, the judge and counsel retired to the judge's chambers where the court made further inquiry into defendant's objection. The court asked defense counsel whether it was defendant's position that he had not made this admission to Wilcox, or that it had been made but was made "* * * under circumstances that would make it inadmissible." Defense counsel replied that it was defendant's position that the admission had not been made, " * * * but that if it were, it was done after this man [Wilcox] had beaten him up * * *" while he was in custody. In response to another inquiry by the court, defense counsel said he wanted to offer testimony by defendant on this subject outside the hearing of the jury. At this point state's counsel intervened and stated that it was the state's position that defendant had waived any objection he had to this testimony; that defendant had not raised his objection on constitutional grounds before trial and he had, therefore, waived such right. At the close of the

conference in chambers the court stated: "The Court is satisfied that his [defense counsel's] position is that the man [defendant] did not make the statement, so there would be no purpose of further inquiry as to whether or not it [defendant's admission] was voluntary." Although the court was obviously aware that defendant's position was that this admission was the result of physical coercion and not voluntary, no evidence was heard by the court on its voluntariness and admissibility outside the hearing of the jury. The court did not make a specific finding that defendant's admission was voluntary and, therefore, admissible, unless we may say that the court did so indirectly by its failure to change its tentative ruling made just before the conference in chambers.

The state contends that defendant's admission that he shot at McCafferty was made before the altercation between defendant and Lieutenant Wilcox; defendant contends that it was made afterwards and was the result of his being "brutally beaten" and physically coerced by the Lieutenant. The record is not clear as to the sequence of these events; we cannot determine conclusively from the transcript whether defendant's admission was before or after this altercation; nor can we determine conclusively from the transcript what the facts are concerning the circumstances surrounding the confession or admission.

The substance of parts (b), (c), (d) and (e) of defendant's first point briefed is that the court erred in ruling that "there would be no purpose of further inquiry as to whether or not it [defendant's admission] was voluntary." Defendant contends that further inquiry should have been made during that conference outside the hearing of the jury; that the state

should have been required at that time to prove that the admission was voluntary and, failing in that proof, the testimony pertaining to the admission should have been stricken and the jury instructed to disregard it.

■ The burden was on the state to prove that the incriminating admission was voluntarily made by defendant. State v. Williams, Mo., 369 S.W.2d 408, 418 [4]; State v. Bradford, Mo., 262 S.W.2d 584, 586 [1]. In State v. Washington, Mo., 399 S.W.2d 109 [12], at l. c. 114, this court said: "The Missouri practice contemplates a preliminary or voir dire examination to determine the competency of a confession before it is presented to the jury. This is a full hearing on the voluntariness of a confession out of the presence of the jury and a finding by the court that the confession was voluntary before it is admitted in evidence. State v. Howard, Mo., 383 S.W.2d 701, 702 [1]. Thereafter, the witnesses to the circumstances under which the confession was made testify before the jury. The jury then determines the probative value of the confession under the instructions of the court which direct the jury to disregard it entirely if the jury finds the confession was not voluntarily made." [1] Also see Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

■ Apparently the court overlooked defendant's position that if the admission was made it was the result of physical coercion and therefore involuntary and inadmissible. The court obviously dismissed summarily defendant's desire to offer evidence on this issue during the conference in chambers; it thereby ignored the necessity of a full hearing on this separate issue outside the presence of the jury and the necessity of a finding and determination by

1. We note, parenthetically, that defendant did not request, and the court did not give, an instruction submitting to the jury the issue of voluntariness of the admission or confession. Parenthetically again, we note that unless requested by defendant he would be in no position to complain of the court's failure to give an instruction on this collateral issue. State v. Pughe. Mo., 403 S.W.2d 635, 641 [11, 12].

the court that defendant's admission or confession was either voluntary and therefore admissible in evidence or involuntary and inadmissible. The court erred in refusing to hear evidence on that issue; it also erred in not determining that issue based on evidence heard at a preliminary or voir dire examination, as is required by State v. Washington, supra. The result is that defendant was denied that hearing and determination to which he was constitutionally entitled. Jackson v. Denno, supra.

■ However, it does not necessarily follow that, for these errors, defendant is entitled to a new trial on all issues. He is entitled now only to a full, adequate evidentiary hearing before the trial court, without a jury, on the coercion issue, and a determination and finding by the court of whether the admission or confession was voluntary or involuntary. If the court determines that his " * * * confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for * * * [he] has already been tried by a jury with the confession placed before it and has been found guilty * * * [;] there is no constitutional prejudice * * * if the confession is now properly found to be voluntary and therefore admissible. If the jury relied upon it, it was entitled to do so. Of course, if the * * * court, at an evidentiary hearing, redetermines the facts and decides that * * * [his] confession was involuntary, there must be a new trial on guilt or innocence without the confession's being admitted in evidence." Jackson v. Denno, supra, 84 S.Ct. at l. c. 1790 [18].

■ In part (a) of his first point defendant contends that his admission or confession should have been excluded, because he was not first advised of his constitutional rights to remain silent, to counsel, and to consult with a friend. In support of this contention he cites Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct.

1758, 12 L.Ed.2d 977; State v. Boykins, Mo., 399 S.W.2d 70; State v. Pughe, Mo., 403 S.W.2d 635. Defendant recognizes that Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, is not applicable, because the case was tried before *Miranda*. As related above, defendant's admission or confession that he fired the shot was made at the police car during a search of his person for a weapon, or immediately after that search, within minutes after his apprehension inside the building and while his companion Keltner was still at large, so to speak, inside the building. Under these facts and circumstances, neither *Escobedo, Boykins* at l. c. 72 [1] of 399 S.W.2d, nor *Pughe* at l. c. 640 [8] of 403 S.W.2d is applicable. We have held in several recent cases that the court will not expand Escobedo beyond its facts. See State v. Dixon, Mo., 411 S. W.2d 185, and cases cited at l. c. 186.

In his second point defendant contends that the finding of the court was insufficient to permit the court to assess the punishment under the provisions of the Habitual Criminal Act, § 556.280.

■ He also contends, as a part of this point, that the sentence of seven years on his conviction of stealing in connection with burglary is excessive. This sentence for stealing is excessive; the maximum sentence is five years. § 560.110.

■ After hearing evidence of a prior conviction, sentence and imprisonment therefor, the court made the following finding: " * * * that defendant is an Habitual Criminal within the meaning of the Statute as defined by law." This finding is not a sufficient compliance with the requirements of § 556.280 to authorize the court, rather than the jury, to assess punishment on conviction. State v. Garrett et al., Mo., 416 S.W.2d 116 (Division 2 opinion handed down June 12, 1967); State v. Hill, Mo., 371 S.W.2d 278, 282 [7, 9]. In *Garrett* the court said: " * * * in order

to make the act applicable the Court must find that the defendant had been convicted of and sentenced for one or more offenses punishable by imprisonment in the penitentiary *and* that he had subsequently been imprisoned, fined, paroled or placed on probation therefor (in the alternative, to accord with the evidence)." Unless the court can, and does, make these findings the specific requirements of the statute have not been met and the court would be without authority to assess the punishment on conviction. The sentence is void, State v. Hill, supra, l. c. 283, and for this and other reasons, the judgment must be reversed and the cause remanded.

The cause will be remanded so that the trial court may bring defendant, with counsel, before it at an appropriate time for these purposes:

1. A full evidentiary hearing on the coercion issue and a determination and finding by the court whether the admission or confession was voluntary or involuntary. If, after such hearing, the court finds and determines that it was involuntary, then it shall grant a new trial on all issues, without his admission or confession being admitted in evidence.

2. If the court finds and determines that the admission or confession was voluntary, it shall then further consider the evidence already submitted, and any such additional evidence as may be submitted, on the issue of prior conviction, sentence, and imprisonment, fine, parole or probation therefor; and, it shall make and enter appropriate findings thereon. If the court finds this issue against defendant, it shall proceed to grant allocution and render proper judgment and sentence; in the alternative, if the court finds this issue in favor of defendant, it shall grant him a new trial on all issues. See State v. Hill, supra, l. c. 282–283.

We find no error in those parts of the record we are required to examine under Criminal Rule 28.02, V.A.M.R., except those related above pertaining to the judgment and sentence.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

SEILER and HOLMAN, JJ., concur.

STORCKMAN, J., not sitting when cause was submitted.