**STATE of Missouri, Plaintiff–Respondent,**

v.

**Stephen L. FINSTER, Defendant–Appellant.**

**Stephen L. FINSTER, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

Nos. 19139, 20453.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 27, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 17, 1998.

Application for Transfer Denied
March 24, 1998.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jill C. LaHue, Asst. Atty. Gen., Jefferson City, for respondent.

SHRUM, Judge.

A jury convicted Stephen L. Finster (Defendant) of second degree murder, § 565.021.1(2), and armed criminal action, § 571.015, for the fatal stabbing of a young woman.[1] Defendant appeals those convictions in No. 19139.

In his direct appeal, Defendant claims *inter alia* that the trial court erred in denying his motion to suppress statements he made to Deputy Sheriff Douglas Seneker and in overruling his objection at trial to such statements. He insists that reversal is mandated because, through no fault of his own, a transcript of the suppression hearing is unavailable. Defendant asserts that without a full, fair, and complete transcript on appeal, he is deprived of a meaningful appellate review of his claim that violations of his constitutional rights during interrogation rendered his waiver of *Miranda* rights involuntary.[2]

We agree. We conclude that before this appeal can finally be determined, another evidentiary hearing is required on the preserved issue, i.e., whether Defendant's written statement to Seneker was rendered inadmissible because Defendant was not given his *Miranda* warnings or, if given such warnings, he did not voluntarily waive his *Miranda* rights. We remand so that the trial court can conduct an evidentiary hearing and make findings as directed at the conclusion of this opinion.[3]

---

1. Statutory references are to RSMo 1994 unless otherwise stated.

2. In *Miranda v. Arizona,* the United States Supreme Court set out what has become known as "the *Miranda* warning" as a means of satisfying the "procedural safeguards" required to protect an individual's privilege against self-incrimination. 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630[66, 67] 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

3. After he was sentenced, Defendant sought post-conviction relief pursuant to Rule 29.15. In No. 20453, Defendant appeals from the denial of his Rule 29.15 motion. Because Defendant was sentenced before January 1, 1996, and his Rule 29.15 motion was filed September 26, 1994, his post-conviction motion is governed by Rule 29.15

There was evidence from the State's witnesses from which a jury could reasonably have found that Defendant picked up the 19-year-old female victim on a street in Springfield, Missouri, and then drove her to a remote area of Lawrence County where he stabbed her to death. Defendant admitted the victim was with him in his car the day she disappeared. He claimed, however, that he refused to drive the victim to Carthage, Missouri, as she requested, but instead drove her to I–44 west of Springfield. According to Defendant, when he tried to push the victim out of his car, she attacked him, inflicting multiple scratches on his face. Continuing, Defendant testified that the victim got out of his car and the last he remembered of her, she was walking toward I–44.

Defendant's original defense lawyers filed a "Motion to Suppress Written and Oral Statements" of Defendant made to law enforcement personnel. In part this motion alleged that Defendant was not given the *Miranda* warning before he was interrogated and that any asserted waiver of his *Miranda* rights was not voluntary.

At an evidentiary hearing on this motion held April 6, 1993, the State elicited testimony from six law officers and a man named John David Little. These officers were Sgt. Martin and Sgt. Parks (Missouri State Highway Patrol), Seneker and Greg Brandsma (Lawrence County Sheriff's Office), Detective Weter (Springfield Police), and Marc Mansfield. Ultimately only three of the five officers testified at trial, Martin, Seneker, and Brandsma. Trial testimony established that Martin and Seneker did most of the interrogation of Defendant. However, Parks and Weter each conducted one-on-one interrogations of Defendant when no one · else was present. Eight days after the suppression hearing, the trial court overruled Defendant's motion to suppress statements.

Acting on a request by Defendant's lawyers, the trial court on April 12 directed his court reporter, Wilma Jean Greene, to prepare transcripts of the April 6 suppression hearing. On April 21, 1993, the trial court

granted Defendant's request for a new trial date because the court reporter had not "complete[d] the transcript of the testimony heard on April 6th" due to the "critical illness of her mother." As part of its order, the trial court directed Greene to have the subject transcripts completed by May 28.

A docket entry dated July 15 recited that the defense had applied for another continuance because Greene had not yet completed the April 6 transcript. It also noted that Defendant's lawyers had moved to withdraw due to a conflict of interest.

On July 19, the lawyers originally assigned to Defendant were permitted to withdraw. Jon Van Arkel, a public defender from the 31st judicial circuit, was appointed as Defendant's lawyer. The case was reset for trial on August 30. At the same time, the trial court ordered Greene to limit her preparation of the suppression hearing transcript to Little's testimony.

Defendant's new trial counsel, Van Arkel, moved on August 6 for a complete transcript of the suppression hearing. Van Arkel also asked for a continuance in order to get the transcript, alleging that it was necessary for his trial preparation. Defendant's motion for continuance was denied. When the case went to trial on August 30, 1993, the court reporter still had not transcribed any of the suppression hearing, except for Little's testimony.

At trial, Martin and Seneker testified to various oral statements given them by Defendant over a two-day period. Additionally, Defendant signed a written statement prepared by Seneker (Exhibit 29). The trial court admitted Exhibit 29 over Defendant's objection. The jury ultimately convicted Defendant and this appeal followed.

As Defendant commenced preparing his record on appeal, he requested Greene to prepare a transcript of the April 6, 1993, suppression hearing. Greene responded by giving various reasons why she could not prepare the transcript. Ultimately, this court appointed a special master to hold an

---

(1994). Rule 29.15(*l*) (1994) mandated consolidation of the two appeals. Because a supplemental hearing is required in No. 19139, we hold

No. 20453 in abeyance pending the trial court's further decision in the direct appeal.

evidentiary hearing and determine, among other things, what reporter took the April 6, 1993, suppression hearing, whether any part of the notes of Greene had been lost or destroyed as she claimed, and if any part of Greene's records were lost or destroyed. The Master's report to this court concluded that Greene was the reporter who took the April 6, 1993, suppression hearing and that her notes relating thereto had been lost or destroyed (but not intentionally).

Defendant's fourth point contends that the trial court erred in overruling his motion to suppress statements and his objections to admitting statements at trial as these rulings violated his constitutionally guaranteed "privilege against compelled self-incrimination." Specifically, Defendant says "the state did not establish that [Defendant's] statements to ... Seneker were voluntary under the totality of the circumstances since ... Seneker's interrogations followed interrogations by Detective Weter and Sergeant Parks whose conduct may have rendered [Defendant's] subsequent statements to.. Seneker involuntary." Defendant argues that the testimony of Weter and Parks concerning their conduct "comprise[s] a critical portion of the totality of the circumstances that determine the voluntariness of [Defendant's] statements in the face of ... Seneker's interrogation." Yet, Defendant maintains he cannot obtain appellate review of this question based upon a full, fair, and complete transcript because Greene cannot produce a transcript of the suppression hearing.

■ The State's initial response is that Defendant has not preserved this allegation of error since it was not included in his motion for new trial. This is only partially correct. Defendant's new trial motion alleged *inter alia* that the trial court erred when it overruled his "Motion to Suppress Written and Oral Statements in violation of Article I, Sections 15, 18(a) and 19, of the Missouri Constitution and Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution." As argued by the State, a trial court's ruling on a motion to suppress statements is interlocutory, *State v. Pugh,* 600 S.W.2d 114, 117 (Mo.App.1980). Claims of trial court error in ruling an inter-

locutory motion preserve nothing for appeal. *See State v. Taylor,* 929 S.W.2d 925, 927 (Mo.App.1996).

■ However, in another paragraph of Defendant's motion for new trial he alleged that the trial court erred when it failed to sustain his objections to "exhibit[ ] ... #29, a typed statement signed by defendant in the presence of ... Seneker." Continuing, this paragraph asserted that Exhibit 29 was a statement made by Defendant "when in custody and when being interrogated without having been apprised of and without having waived his *Miranda* rights. . . ." These allegations preserve *Miranda* issues regarding the written statement given by Defendant to Seneker. Yet, they preserve only those issues. Claims of error in the admission of other statements made by Defendant are not preserved.

■ A trial court, when deciding whether to allow the introduction of a defendant's incriminating statements in the face of *Miranda* objections, may base its decision on evidence heard at the suppression hearing, evidence received at trial, or both. *See State v. Blackman,* 875 S.W.2d 122, 135[26] (Mo. App.1994); *See State v. Hummel,* 652 S.W.2d 749, 750 (Mo.App.1983). This follows because a motion to suppress an incriminating statement is akin to a motion to suppress physical evidence, i.e., both involve admissibility of evidence, an issue collateral to the accused's guilt or innocence. *See State v. Richardson,* 810 S.W.2d 544, 546 (Mo.App. 1991).

■ Defendant, in urging reversal of his convictions, points out that the State bore the burden of producing evidence and persuading the trial court that the confession it sought to admit was voluntary. *See State v. Lytle,* 715 S.W.2d 910, 915[3] (Mo.banc 1986). He also reminds us that, when deciding the voluntariness of a *Miranda* waiver, a reviewing court is to examine the totality of the circumstances. *State v. Banks,* 922 S.W.2d 32, 39[4] (Mo.App.1996). Moreover, says Defendant, he "is entitled to appellate review based upon a full, fair and complete transcript." *Jackson v. State,* 514 S.W.2d 532, 533[1] (Mo. 1974). With these principles in mind, Defen-

**418**

dant insists that the testimony of Weter and Parks would be crucial evidence to decide whether he voluntarily waived his *Miranda* rights. In this case, however, the suppression hearing transcript is unavailable. Since this court cannot review the testimony of Weter and Parks, Defendant contends that we cannot effectively review the trial court's decision. He urges us to grant him a new trial.

While we agree with Defendant that this court cannot at this point adequately review the trial court's decision to admit the statements in question, we do not agree with his request for a new trial. This case differs from other situations in which a missing transcript bears directly on the determination of a defendant's guilt or innocence. *See e.g., State v. Brown,* 690 S.W.2d 161 (Mo. App.1985). In this case, there is no transcript of a hearing concerning matters collateral to a defendant's guilt or innocence. We deem this case analogous to the situation before the Missouri Supreme Court in *State v. Mitchell,* 611 S.W.2d 211 (Mo.banc 1981).

In *Mitchell,* the defendant moved to suppress his statement to a policeman, claiming that it was not voluntary and was obtained in violation of his constitutional rights under Article I, Section 19 of the Missouri Constitution and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. 611 S.W.2d at 212. Because of pretrial comments by defense counsel and the prosecutor, the trial court commenced the trial on the assumption that no confession had been obtained and without holding a hearing on the motion to suppress defendant's statement. *Id.* During trial the State elicited testimony from a policeman, over defense objection, about a statement made by defendant to the policeman. *Id.* On appeal from his conviction, defendant urged reversal because he was not afforded a hearing on his motion to suppress and the trial court did not determine that the statement was freely and voluntarily given. Our supreme court dealt with defendant's argument as follows:

"The fact that the court gave an instruction (MAI–CR2d) [3.44], to the effect that if the jury found that a statement was

made by defendant and was made freely and voluntarily, then the jury could give it such weight as they believed it deserved, but if not made freely and voluntarily, the jury must disregard it, does not cure the failure of the trial court to pass first on the voluntariness issue. It has long been the law in Missouri that as to confessions the trial court must first determine whether it is voluntary and, if so, the confession can then be put in evidence, with the jury also being given the opportunity to pass on its voluntariness.

. . . .

"Before this appeal can be finally determined, a supplemental hearing is required on the voluntariness issue, using the procedure employed in *State v. Gower,* 418 S.W.2d 10, 14 (Mo.1967)."

611 S.W.2d at 214. Thereon, the *Mitchell* court remanded the case to the trial court with directions that it hold a full evidentiary hearing on the voluntariness issue. *Id.* at 214.

Here, as in *Mitchell,* the missing transcript involves admissibility of evidence, an issue collateral to the accused's guilt or innocence. *See Richardson,* 810 S.W.2d at 546. Although the missing transcript in this case may have revealed that the trial court erred in its final decision at trial, *Mitchell* holds that a supplemental evidentiary hearing procedure is available on the similar issue of voluntariness.

We discern only one distinction between *Mitchell* and this case. In *Mitchell* there was no hearing; consequently there was no transcript. In this case, a hearing was held but the court reporter did not do her job; consequently, there is no transcript. We find that to be a distinction without a difference.

Relying on *Mitchell* as authority, this cause will be remanded so that the trial court may bring Defendant, with counsel, before it at an appropriate time for these purposes:

1. A full evidentiary hearing on the *Miranda* issues concerning the written statement given by Defendant to Deputy Douglas Seneker and a determination and finding by the court whether the statement to Seneker

was voluntary or involuntary. All witnesses who testified at the original suppression hearing who are alive and locatable by bona fide effort shall be subpoenaed to attend and be available to testify at the new hearing.[4] If, after such hearing, the court finds and determines that it was involuntary, the judgment shall be set aside and the trial court shall grant a new trial on all issues, without the Defendant's written statement to Seneker (Exhibit 29) being admitted in evidence.

2. If the court finds and determines that the statement was voluntary, then it shall certify the transcript of the hearing and its determination and findings to this court to be made a part of the transcript in the case for determination and disposition of the appeal upon the record as supplemented.

PARRISH, P.J., concurs in separate opinion.

MONTGOMERY, C.J., concurs.

PARRISH, Presiding Judge, concurring.

I concur in the result reached. As the principal opinion states concerning the absence of a transcript of testimony from the hearing on the motion to suppress, the issue addressed in that hearing was collateral to defendant's guilt or innocence. The testimony was not presented to the jury in the criminal case. In my opinion, if the witnesses who testified at the initial hearing are now available, the rationale of *State v. Mitchell*, 611 S.W.2d 211 (Mo. banc 1981), is applicable. *Mitchell* is a decision of the Supreme Court of Missouri. This court is bound by it. Mo. Const. art. V, § 2; *Soto v. State*, 858 S.W.2d 869, 871 (Mo.App.1993).

I agree with the principal opinion's assessment that the court reporter involved in the trial and the suppression hearing failed to do her job. Section 485.050, RSMo 1994, states the duties of an official court reporter. Those duties include preserving "all official notes taken in said court for future use or reference, and to furnish to any person or

persons a transcript of all or any part of said evidence or oral proceedings...." *Id.*

The court reporter's failure to preserve the notes from the suppression hearing is inexcusable notwithstanding that the rationale of *Mitchell* affords a possible remedy for the situation that now exists. It should be noted that the reporter who now serves as official court reporter of the 39th Judicial Circuit was not the reporter who served in that capacity at the time the trial and suppression hearing were held.

---

4. The Master appointed by this court found that the trial judge, the Honorable William H. Pinnell, "is serving as a Senior Judge." The Master also found that "[o]fficers Martin, Weter, Parks, Seneker, Brandsma, and Mansfield may all be available." These peculiar facts suggest to this court that ordering a supplemental hearing here is more strongly indicated than in the situation found in *Mitchell*.