STATE of Missouri, Plaintiff/Respondent,

v.

Gregory DAY, Defendant/Appellant.

Gregory DAY, Movant,

v.

STATE of Missouri, Respondent.

Nos. 69627, 73078.

Missouri Court of Appeals,
Eastern District,
Division One.

June 16, 1998.

Susan W. McGraugh, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Meghan J. Stephens, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

█ Appellant, Gregory Day (Day), was convicted of ten separate counts of murder, assault, and robbery. Count I was first degree murder, Section 565.020.1 RSMo (1994); [1] Count III was second degree murder, Section 565.021; Count V was assault in the first degree, Section 565.050; Count VII was robbery in the first degree, Section

569.020; Count IX was attempted robbery in the first degree, Section 569.020. The five remaining counts were for armed criminal action, Section 571.015 (Counts II, IV, VI, VIII, and X). The court sentenced him as a prior and persistent offender to eight life sentences and two terms of thirty years, to run consecutively.[2] Day has two points on appeal. First, Day claims he should be granted a new trial because the state did not make a prima facie showing that his statement to police was made knowingly and intelligently prior to presenting evidence of the statement to the jury. Second, Day alleges the trial court erred by allowing the state to introduce hearsay statements of his codefendant implicating him in the homicides. We remand for further findings on the voluntariness issue, and reject Day's claim that the trial court erred in admitting the alleged hearsay statements.

We recite the facts in the light most favorable to the verdict. Between 10 p.m. and 11 p.m. on March 18, 1995, Day and Derwin Taylor (Taylor) visited James Thomas's house. Darey Davis (Davis) was sitting on the porch when Day and Taylor arrived. Davis sold crack cocaine out of the house. Davis knew Day and Taylor, and invited them into the house.

Day announced to Davis that he was going to rob someone that night. Having known Day for some time, Davis testified that he "wasn't bothered" by Day's statement. Day stood up in front of Davis and pulled a chrome plated gun from his waist band. Day "cocked" the gun back, and a shell jumped out of the chamber and fell to the floor. Day immediately began looking for the shell on the ground, saying "we need this, we got to find this." Davis did not help look for the shell.

While Day and Taylor searched for the lost shell, a woman Davis knew knocked on the door. She asked Davis for drugs. He told her he did not have any at that time. Davis asked the other two several times if they had

---

1. All subsequent statutory references are to RSMo (1994).

2. As Day's brief raises no issues pertaining to the judgment denying his Rule 29.15 motion, his

appeal from this judgment is deemed abandoned. *State v. Wessel*, 950 S.W.2d 14 n. 2 (Mo.App. E.D.1997).

any drugs. After the third question, Taylor responded that he didn't have any drugs. Davis instructed the woman to come back in fifteen or twenty minutes.

As Davis returned to the couch, Taylor found the shell and handed it to Day. Day put the bullet back into the gun, and cocked it. Day testified at trial: "And then he cocked it back again and then I sat back on the couch, wasn't paying no attention, and I was still looking at the videos. And then he was like just pointed it at me for the last time, then he just shot me. Then he said, Give it up." The bullet entered Davis's face in the mid-nose area, and lodged in the back of his neck, near the hairline. Davis retained consciousness after being shot. He reached under the cushion and handed Day the $150 he had been hiding there, then stumbled into the back bedroom of the house, where he fell face up and played dead. By looking from under his mostly-closed eyelids, Davis could see what was going on around him.

In the bedroom where Davis fell, James Thomas (Thomas) was sitting on the bed and Flora Jones, Thomas's girlfriend, was sitting in a chair in a corner of the room. From his position on the floor, Davis could see Day entering the bedroom with the gun in his hand. He could hear Thomas begging Taylor to not allow Day to kill him. Thomas was moving to lie face down on the floor when Day said "give it up," and pointed the gun at Thomas. Davis closed his eyes. He heard two gunshots in rapid succession.

Day and Taylor walked over to where Davis was lying. They rolled him over on his stomach, and pulled down his pants and underwear. Day said, "This one ain't got no money." Before leaving, Davis heard Taylor say, "Make sure they are dead." Davis held his breath when Day turned him over to look at his face. Apparently thinking Davis was dead, the two walked away from where he was lying. Davis heard the front door slam, and waited a few moments before sitting up. James Thomas was lying on the floor beside him, and Flora Jones was slumped in her chair. Both victims had been shot once, and died from their wounds. Davis dialed 911. The state's trial evidence included the tape recording of Davis's call. Davis crawled to the door to unlock it for the police when they arrived. Shortly after the events at Thomas's house, Day and Taylor went to a girlfriend's house. She testified that they were both acting nervous. Day put a gun in the trash can. She saw Day go in her bedroom and pull blood-stained money out of his pocket.

Davis identified his assailants. Police spoke to Taylor's father, who put them in touch with Taylor, and an informant gave police Day's last name. When Day was arrested, he was *Mirandized* and questioned about his involvement in the shootings.

Day's first argument is that the trial court erred because it did not make an explicit finding that his statements to police were made only after a knowing and intelligent waiver of his rights to remain silent and to a lawyer.

"In reviewing the trial court's ruling on a motion to suppress, the facts and reasonable inferences arising therefrom are to be stated favorably to the order challenged on appeal and we may disregard all contrary evidence and inferences." *State v. Anderson,* 862 S.W.2d 425, 430 (Mo.App. E.D.1993). The statement occurred after Day was arrested. The officer testified that, at the time of arrest, he advised Day of his rights including the right to remain silent and his right to an attorney. Police then drove Day to the police station. At the station, Day told police that he did not know anything about the murders, and that he could not account for his whereabouts on that night. Police told him the names of the persons involved, and Day claimed that he did not know them. After further questioning, and after the police advised Day of Davis's statement to police, Day said that he wasn't worried because the police "didn't have any witnesses," and smiled. Questioning ended at that time.

During pretrial motions, the court addressed a motion by the defense to suppress evidence, including a motion to suppress the statement made by Day to the police. Defense counsel asserted that she wanted the motion to suppress the statement to stand, though she felt "those can be taken up with the trial at that time." The court observed

that it understood that the state did not intend to use the statement, and it would address the motion to suppress if and when the state decided to use the statement.

The state elected to use the statement at trial. Defense counsel made a proper objection to renew the motion she had made before trial, and asserted that the state did not present a sufficient showing that the statement was voluntary. The court overruled the motion, but did not explicitly find that the statement was voluntary at that time. The state did not submit any evidence except that the *Miranda* warnings had been given.

The court and both counsel discussed the statement further in a colloquy during the sentencing hearing. Four days after Day's motion for new trial, the court issued an order stating that Day's statements were properly admitted because he had been advised of his *Miranda* rights. The order said it was "abundantly clear" that Day made a knowing and intelligent waiver of his rights based on a totality of the circumstances.

Day contends that he should be granted a new trial because the court did not make an explicit finding that his statement was voluntary before the statement was admitted. Day points out that no evidence was presented showing Day acknowledged he understood his rights, that he waived his rights, and that no signed or initialed *Miranda* waiver and warning form was presented. The only evidence presented was that the officer read Day his *Miranda* rights.

 When deciding whether to allow the introduction of a defendant's incriminating statements in the face of *Miranda* objections, a trial court may base its decision on evidence heard at the suppression hearing, evidence received at trial, or both. *See State v. Blackman*, 875 S.W.2d 122, 135 (Mo.App. E.D.1994), *State v. Finster*, 963 S.W.2d 414 (Mo.App. 1998). The state has the burden to produce evidence and persuade the trial court the statement was voluntary by a preponderance of the evidence. *State v. Simpson*, 606 S.W.2d 514, 516 (Mo.App. W.D. 1980). The reviewing court must examine the totality of the circumstances. *State v. Banks*, 922 S.W.2d 32, 39 (Mo.App. 1996), *Finster, supra.*

 The state's initial burden may be met with a prima facie showing that the defendant was informed of his rights, that he could understand the rights, and that no physical force, threats, promises or coercive tactics were used to obtain the confession. *Simpson*, 606 S.W.2d at 516–17. After the state has made a prima facie case, the defendant must produce evidence showing any "special circumstance" that may have rendered the confession involuntary. *Id.* On appellate review, we must determine whether there was substantial evidence to support the trial court's decision.

 We hold the state presented insufficient evidence to show Day waived his rights. While Day was given his *Miranda* warning, there was no evidence that he understood his rights or waived his right to an attorney. We agree that the fact Day was properly *Mirandized* is a substantial indicator of the propriety of the evidence, however the state has the burden to show that Day willingly waived those rights before making his incriminating statement. Mere reading of the *Miranda* warnings is insufficient indicia of voluntariness, particularly since Day challenges the state's prima facie evidence. *Id.* The state concedes as much in their appellate argument and motion to remand for a hearing.

 Day urges that a new trial is necessary to cure the trial defect caused by admitting his statement, while the state suggests we order a further evidentiary hearing to determine whether the statement was voluntary. In *Finster* and *State v. Mitchell*, 611 S.W.2d 211 (Mo. banc 1981), the courts ordered a supplemental hearing to determine whether a statement to police was voluntary rather than remanding for an entirely new trial. In *Finster*, the court ordered a supplemental hearing because there was no transcription of any testimony relating to whether *Miranda* warnings had been given. In *Mitchell*, the prosecutor used a statement for impeachment purposes when the statement was made before the defendant had been *Mirandized*. *Mitchell*, 611 S.W.2d at 211. A motion to suppress the defendant's confession was filed with the trial court. *Id.* at 212. When the court asked the prosecutor wheth-

er he planned to introduce a confession, the prosecutor claimed that the defendant had not made a confession. *Id.* The court continued with trial based on the erroneous conclusion that no suppression hearing was necessary because no confession had been made by the defendant. *Id.* However, the court later admitted evidence of the confession. The facts of the instant case are similar to the facts in *Mitchell,* except *Miranda* rights were read in the instant case. We grant the state's motion for a hearing. We remand the case to the trial court for a hearing on the voluntariness issue, in accordance with the procedure outlined in *Mitchell* and *Finster:*

1. A full evidentiary hearing on the voluntariness issue and a determination and finding by the court whether the statement to police was voluntary or involuntary. If, after such hearing, the court finds and determines that it was involuntary, the judgment shall be set aside and the trial court shall grant a new trial on all issues, without the statement being admitted in evidence.

2. If the court finds and determines that the statement was voluntary, then it shall certify the transcript of the hearing and its determination and findings to this court to be made a part of the transcript in the cause for determination and disposition of the appeal upon the record as supplemented. *See, Finster* and *Mitchell,* 611 S.W.2d at 214.

In his second point on appeal, Day contends that incriminating statements by Day's co-defendant Taylor were hearsay, and should not have been admitted. He complains about three different incidences of alleged hearsay.

■■■ Two statements were elicited at trial during the state's questioning of a police officer. The officer testified Taylor told police where Day lived and where he and Day had gone after the murders.[3] Day's defense

counsel properly objected. Hearsay evidence is testimony about a statement made by an out of court witness offered to show the truth of matters asserted, thus denying an opportunity for cross-examination to determine the credibility of the out-of-court statement. *State v. Jones,* 863 S.W.2d 353, 357 (Mo.App. W.D.1993). If the out-of-court statement is offered to provide relevant background to the testimony, as opposed to "the truth of the matter asserted," then the statement is not hearsay and is admissible. *Id.* The trial court specifically limited the prosecutor to questions that would explain the officer's subsequent conduct. The first question elicited testimony that explained why police visited the house were Day lived. The second question explained why police visited the girlfriend's house. Both of the statements were offered to explain later conduct, rather than for the truth of the matter asserted. Therefore, they were not hearsay, and it was not error for the trial court to include them. *State v. Davenport,* 924 S.W.2d 6, 10 (Mo.App. E.D.1996).

■■ The third instance of alleged hearsay may not be reviewed by this court because Day did not object at the proper time. While Day requests plain error review of the testimony, "the admission of hearsay evidence is not plain error if no objection is made at trial to its admission." *State v. Walden,* 861 S.W.2d 182, 187 (Mo.App. W.D. 1993). Point denied.

We remand for further findings consistent with this opinion.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.

---

**3.** State: [W]as Derwin Taylor up there?
 Witness: Yes.
 State: *Without getting into specifics at all, did* you talk to him about the incident?
 Defense Counsel: Objection, Your Honor. This is going to be based on hearsay, if not hearsay itself.
 Court: Well, he can say he talked to him. He can't say what he said.
 State: You talked to Derwin Taylor. Where does Derwin Taylor take you?

 Witness: He showed us Gregory Day's house down on Ashland.

 . . . . .

 State: How is it—why is it that you went to Sylvia's house?
 Witness: That's where Taylor said they went after the incident.
 State: Is that what [Taylor] told you?
 Witness: Correct.
 Defense Counsel: Objection, Your Honor. That's hearsay.