STATE of Missouri, Plaintiff,

v.

Timothy Dale CRAIG, Defendant.

No. 63593.

Supreme Court of Missouri,
En Banc.

Nov. 9, 1982.
As Modified Dec. 3, 1982.
Rehearing Denied Dec. 3, 1982.

James A. Blackwell, St. Charles, for defendant.

John Ashcroft, Atty. Gen., John Jacobs, Asst. Atty. Gen., Jefferson City, for plaintiff.

HIGGINS, Judge.

Timothy Craig was convicted by a jury of murder in the second degree, section 565.-004 RSMo 1978; his punishment was fixed at imprisonment for life, section 565.008(2) RSMo. Sentence and judgment were rendered accordingly. Appellant charges the trial court erred in admitting an inculpatory statement made by defendant; by not sustaining defendant's motion for judgment of acquittal; in submitting the cause to the jury upon a charge of capital murder; by allowing the state to open and close argument in the punishment phase of the trial; and in permitting the state to qualify the jury panel for the death penalty. Affirmed.

Defendant and Christina Craig were married on December 15, 1979, and had one daughter, born in May of 1980. The couple had marital difficulties which led to four or five separations and several violent confrontations. During one fight, defendant hit Christina on the head several times with the butt end of a knife and gave her a black eye; the injuries required hospitalization. Because of these difficulties, Christina filed for divorce on July 15, 1980; she continued to date and have marital relations with the defendant. Between the date Christina filed for divorce and her death, the couple continued fighting.

During the evening of October 2, 1980, Norman Craig, the defendant's father, drove to his son's trailer. He saw Christina's car parked by the trailer with the taillights burning, and discovered Christina's body lying across the front seat. Mr. Craig went back to his home, called the police, then returned to the scene. There is conflicting testimony whether Mr. Craig requested that police enter the trailer and check on the well-being of the defendant;

investigating officers did observe blood on the trailer's storm door handle and eventually forced the door open. An officer discovered the defendant lying on the floor in a closet; when ordered to move his hands into plain view, the defendant responded accordingly. Paramedics were called to administer to the defendant who had minor cuts on both wrists and appeared sluggish and "kind of starey-eyed." One paramedic testified that the defendant was unresponsive at first; he responded to treatment and was characterized as normal and responsive before he was transported to the hospital. This evaluation was verified by the defendant's attending physician who characterized defendant's condition upon arrival at the hospital as alert and responsive.

During the ambulance ride to the hospital, defendant was given the *Miranda* warnings and indicated he understood them. The defendant then told officers riding in the ambulance that he and Christina had been arguing over marijuana that evening. During the argument he had gone to his trailer, picked up a knife and returned to Christina's car. Defendant then stated: "I went to the car and she got smart and shit and I killed her." This statement was corroborated by the two police officers and by the paramedic riding with the defendant. The defendant was arrested and charged with murder.

Prior to trial, the defendant moved to suppress certain evidence including the incriminating statement made in the ambulance. The trial court took the motions under advisement and later ruled the statement admissible. During *voir dire,* the state was allowed to qualify the veniremen for the death penalty, over defendant's objection.

Defendant's version of the homicide was that at approximately 8:00 p.m. on October 2, 1980, he discovered his wife's body lying across the seat of her car. He saw a knife lying across his wife's chest which he picked up and threw. He then attempted to revive her without success. At this point he became nauseated, vomited, then entered his mobile home and barricaded the door. De-

fendant indicated he lost his head and attempted to kill himself by slashing his wrists; he succeeded only in inflicting minor cuts. Having failed in this attempt, defendant washed his wrists, took several tranquilizers, sat in his closet with his head comfortably resting on a pillow, and prayed. He testified he could remember nothing from that point to 5:00 p.m. on October 3, 1980.

### I.

Whether a confession is voluntarily given turns on an evaluation of all the circumstances under which it was made. *Brown v. Illinois,* 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975); *State v. Flowers,* 592 S.W.2d 167, 169 (Mo. banc 1979). The *Miranda* warnings are to be considered when determining whether a confession was voluntarily given; they are not the exclusive consideration. *Brown,* 422 U.S. at 603, 95 S.Ct. at 2261. Physical condition, age, experience, intelligence of the declarant and physical surroundings in which the declaration was made are also part of the consideration when determining the ultimate issue: Was the inculpation the product of free will? *Mincey v. Arizona,* 437 U.S. 385, 398–99, 98 S.Ct. 2408, 2416–2417, 57 L.Ed.2d 290 (1978); *Brown,* 422 U.S. at 603, 95 S.Ct. at 2261; *Flowers,* 592 S.W.2d at 168–69; *State v. Barnett,* 338 S.W.2d 853, 856 (Mo.1960); *State v. Brydon,* 626 S.W.2d 443, 449 (Mo.App.1981). Appellant does not charge any use of physical force, coercion, promises or threats in connection with the inculpatory statement. He alleges the totality of the circumstances indicates an absence of free will which required exclusion of his inculpatory statement, and emphasizes evidence he had consumed several beers the afternoon of the murder; he was under severe emotional stress caused by his wife's murder; he was under the effect of the tranquilizers he had taken; and he was strapped to a stretcher when the statement was made.

Because defendant was in custody when the inculpatory statement was made, the state must prove the voluntariness of

his inculpatory statement by a preponderance of the evidence. *State v. Olds,* 569 S.W.2d 745, 751–52 (Mo. banc 1978). The state is not required to negate all circumstances which might create an issue of fact concerning the voluntariness of a confession. *State v. Harris,* 594 S.W.2d 658, 661 (Mo.App.1980); *State v. Crowley,* 571 S.W.2d 460, 464 (Mo.App.1978); *see also State v. Thomas,* 522 S.W.2d 74, 76 (Mo. App.1975). Evidence of intoxication does not preclude introduction of an inculpatory statement; nor does evidence that the defendant was under the influence of drugs or exhibiting drug withdrawal symptoms. *State v. Smith,* 342 S.W.2d 940, 941–42 (Mo. 1961); *Harris,* 594 S.W.2d at 661. Showing nervousness, excitability, or emotional instability creates a jury question but does not preclude admission of an inculpatory statement. *Barnett,* 338 S.W.2d at 857.

■ The state met its burden and the trial court properly admitted the defendant's inculpatory statement. At the pretrial hearing on defendant's motion to suppress his statements and at trial, paramedic Hickey indicated the defendant had been stuporous when discovered but responded to treatment and was characterized as normal and responsive before transportation to the hospital. This evaluation was supported by the doctor who treated the defendant in the emergency room. He stated the defendant was alert and responded to all requests. Two police officers and paramedic Hickey testified the defendant was given the *Miranda* warnings and indicated he understood them en route to the hospital. Under these circumstances the trial court did not err by admitting the inculpatory statement of the accused.

## II.

■ Appellant contends the trial court erred in denial of his motion for judgment of acquittal asserting the evidence was insufficient to make a submissible case. When considering sufficiency of the evidence, all evidence in the record supporting the jury's finding of defendant's guilt, together with all appropriate inferences, will be taken as true; no consideration will be given adverse evidence or inferences. *State v. Morgan,* 592 S.W.2d 796, 805 (Mo. banc 1980).

■ The defendant admitted killing his wife after one of their many arguments. The state introduced additional evidence which indicated the defendant and his wife had a violent relationship. Blood discovered on the defendant's shirt matched that of the victim. Defendant's former roommate testified the murder weapon resembled one which the defendant had owned. Sufficient proof was introduced from which the jury could reasonably have found defendant guilty as charged. *State v. Kelly,* 539 S.W.2d 106, 109 (Mo. banc 1976).

## III.

■ The trial court submitted the case to the jury upon a charge of capital murder. Appellant contends this constitutes reversible error asserting there was no evidence supporting the elements of deliberation and premeditation. Whether there is sufficient evidence supporting submission of a case is a question of law to be decided by the trial court. *State v. Kinnamon,* 314 Mo. 662, 670, 285 S.W. 62, 63 (1926). Submission is warranted when substantial evidence tends to prove each element of the offense. *State v. McCall,* 602 S.W.2d 702, 707 (Mo.App.1980). In addition, all evidence and reasonable inferences drawn therefrom will be construed in favor of the trial court's decision. *State v. Goforth,* 535 S.W.2d 464, 466 (Mo.App.1976).

■ There need not be direct evidence of premeditation and deliberation to support a capital murder conviction; indirect evidence and inferences reasonably drawn from circumstances surrounding the murder are sufficient. *State v. Turner,* 623 S.W.2d 4, 7 (Mo. banc 1981). Premeditation is present if the accused reflects on his act for any length of time prior to the act. Deliberation is found when an act is performed with a cool and deliberate state of mind. *Id.* at 7; *State v. Strickland,* 609 S.W.2d 392, 394 (Mo. banc 1980). The de-

fendant stated he walked to his trailer, got a knife, and returned to his wife's car. He then stated "she got smart and shit and I killed her." The evidence is sufficient to support a finding of premeditation and deliberation.

## IV.

◼ Appellant charges the trial court committed reversible error by permitting the state to qualify the jury panel for the death penalty. The defendant may not charge error due to qualification of the jury panel for the death penalty where the penalty was not imposed. *Bumper v. North Carolina,* 391 U.S. 543, 545, 88 S.Ct. 1788, 1789, 20 L.Ed.2d 797 (1968); *State v. Mitchell,* 611 S.W.2d 223, 228 (Mo. banc 1981).

## V.

The state was allowed to open and close argument at the punishment phase of the trial pursuant to MAI–CR 2d 15.50. Appellant asks the Court to find the trial court committed plain error in following this procedure asserting that MAI–CR 2d 15.50 conflicts with § 565.006(2). This assertion was specifically addressed in *State v. Moore,* 615 S.W.2d 108 (Mo.App.1981). The court recognized an apparent conflict but held § 565.006(2) was ambiguous and subject to statutory interpretation. Section 565.006 was drafted in response to this Court's decision in *State v. Duren,* 547 S.W.2d 476 (Mo. banc 1977), which held Missouri's existing capital murder provisions unconstitutional in light of *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The legislature's purpose in drafting § 565.006 and its companion provisions "was to create a constitutionally acceptable capital murder law. There is no indication, however, that the legislature intended at the same time to substantially change the existing law regarding lesser included homicides, which unlike capital murder, were completely unaffected by *Duren* and *Gregg,* and which do not constitutionally require similar provisions." *Moore,* 615 S.W.2d at 111. The Court said:

[D]efendant's interpretation of the statute is not logically persuasive when the statute is viewed in relation to other portions of Missouri's law regarding homicides. Under defendant's argument, any defendant indicted for capital murder but convicted of first degree murder, second degree murder, or manslaughter would have a second trial, on the issue of punishment. The *only* possible punishment for a defendant convicted of first degree murder, however, is life imprisonment; obviously, a trial on the issue of punishment in such a case would be without point. *See* § 565.008.2, RSMo 1978.[4] Also, under existing law, in all non-capital homicide trials, the issue of punishment is submitted to the jury at the same time as the issue of guilt, without subsequent introduction of evidence relating to mitigation or aggravation. *See, e.g.,* MAI–CR 2d 15.14, 15.18. As noted previously, however, only capital murder constitutionally requires such a bifurcated procedure.

*Id.* at 611.

◼ The foregoing interpretation of § 565.006(2) demonstrates the trial court committed no error in following the dictates of MAI–CR 2d 15.50.

The judgment of the trial court is affirmed.

DONNELLY, C.J., RENDLEN, SEILER and WELLIVER, JJ., and HENLEY and FINCH, Senior Judges, concur.

GUNN, J., not sitting.

BILLINGS, J., not participating because not a member of the Court when cause was submitted.