STATE of Missouri, Respondent,

v.

Neal David RICKER, Appellant.

Neal David RICKER, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 50589, WD 52205.

Missouri Court of Appeals,
Western District.

Submitted Sept. 27, 1996.

Decided Dec. 3, 1996.

A. Renae Adamson, Rose M. Wibbenmeyer, Asst. Public Defenders, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

Before HANNA, P.J., and SMART and LAURA DENVIR STITH, JJ.

PER CURIAM.

Neal David Ricker appeals from his conviction for two counts of assault in the first degree, § 565.050, RSMo 1994[1] and two counts of armed criminal action, § 571.015. Ricker was sentenced to consecutive terms of twenty-five years imprisonment on Counts I and II (assault and armed criminal action) and to consecutive terms of twenty-five years imprisonment on Counts III and IV (assault and armed criminal action) to be served concurrently to the sentences on Counts I and II. Ricker also appeals from the dismissal of his Rule 29.15 motion for postconviction relief, which was dismissed for untimely filing. In his direct appeal Ricker contends that the trial court erred by not dismissing and in instructing on Counts III and IV because the information was fatally defective in that it did not charge the offense for which Ricker was convicted. He contends that evidence related to Counts III and IV should not have been admitted, and was prejudicial. Ricker also contends that the trial court erred in allowing evidence of a gas leak at the victim's apartment because this evidence was elicited solely to establish Ricker's bad character. He further contends that the trial court erred in imposing judgment and sentence because of the ineffective assistance rendered by trial counsel because counsel failed to file a motion to dismiss Counts III and IV and failed to object to Instruction 8 and Instruction 10. Ricker, in his appeal from the dismissal of his Rule 29.15 motion for post-conviction relief as untimely, challenges that dismissal as violative of his rights to due process of law because the rule makes no

---

**1.** All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

provision for a late filing of a postconviction motion for good cause shown.

The evidence is viewed in a light favorable to the verdict. Ricker and his victim, Charisse Bohanan, had a complicated and stormy relationship since 1990. The developments in that relationship have a surreal quality befitting a cheap horror movie. In July 1993, Ricker, in a state of anger, threatened to kill Bohanan. She testified that Ricker told her that, "he wouldn't do anything to hurt me then because there would be too much attention brought to himself, that he would wait until my guard was down and then he would take me somewhere where no one would—no one would hear me scream and no one would find what was left of me." Ricker uttered similar threats on other occasions, always mentioning a remote place.

On January 31, 1994, Ricker visited Bohanan at her duplex apartment. He told her that he was going outside to start his car to let it warm up before he left. He was gone for a longer time than it would have taken to start the car. After he returned, Ricker seemed in a hurry to leave. Later that night, Bohanan was awakened by her neighbor, Mike, who had discovered, upon his arrival home, that his apartment was filled with gas. Kenneth Springs, a gas company serviceman, found that the plug of a capped-off gas line had been inexpertly removed in Bohanan's part of the duplex basement. The shut-off valve had been turned to a fully open position. The tampering had occurred recently; the areas where the plug was chewed-up were shiny. The padlock to Bohanan's basement had been pried off.

In February 1994, Ricker and Bohanan traveled to Springfield, Missouri. Ricker became very angry when Bohanan told him that she had told her mother and some friends about the trip. They also argued over Ricker's request that Bohanan register for the motel room in her own name as a single occupant. In March 1994, Ricker and Bohanan were stopped by a deputy from the Andrew County Sheriff's department for having a front headlight out. A loaded shotgun was discovered in the back of Ricker's car. The deputy returned the gun to Ricker after he unloaded it.

On April 24, 1994, Ricker and Bohanan arranged to meet at the Pigeon Hill nature area in order to set out a salt lick. On her way to Pigeon Hill, Bohanan ran into her father at a gas station. She told him where she was going and whom she was going to meet. Bohanan drove to the archery range, where she and Ricker had met before. Ricker was there, but his car was not in sight. The two of them stayed at Pigeon Hill until early afternoon. They located a good place to position a salt lick. Ricker told Bohanan that he knew that she had stopped to talk to someone before reaching Pigeon Hill. She told him that she had run into her father. Ricker became upset that Bohanan had told her father of her plans. The two agreed to meet the following day. Ricker specifically told Bohanan, "that this was our special place and our secret place, and not everybody needed to know about it and not to tell anyone."

On April 25, 1994, Bohanan met Ricker at Pigeon Hill. When Bohanan arrived, at approximately 6:30 p.m., she noticed that neither Ricker nor his vehicle was in sight. Bohanan changed out of her work clothes into street clothes. Ricker, dressed in camouflage, beckoned to her from the edge of the woods. The two of them proceeded to a cliff edge that overlooked the salt lick, where they sat. After close to an hour, Ricker announced that he needed to relieve himself. Refusing Bohanan's offer to go back with him to the parking lot where the public bathrooms were located, Ricker announced that he was "going to rough it" and told Bohanan to sit by the trees out of the wind.

Shortly thereafter, Bohanan heard a loud booming and crashing noise that she thought was thunder. At the same moment, she felt a pain in her head and a burning sensation down her head and her back. She thought that she had been hit by lightning. Sometime later, Ricker appeared and asked Bohanan if she had been hurt. Bohanan told him that she needed to get to a hospital, but Ricker refused, stating that he needed to clean up first. He left, and then returned eventually and helped Bohanan walk back to the trail. He left Bohanan lying in the mid-

dle of the trail. Bohanan passed out. When she awoke, it was dark.

Bohanan attempted to slide her way down the trail. She then slowly got up and began to walk out of the woods. She heard someone call out her name. She called out to Ricker, who eventually answered. Bohanan managed to get clear of the woods. Ricker followed, emerging from the woods. He attempted to get her to go back into the woods. She refused, telling him that she had been struck by lightning. Bohanan jerked away from Ricker, reaching for a can of mace that she carried. Ricker knocked her to the ground, lifted her back up and took her back into the woods. He then pushed Bohanan down an incline. She crawled back to the clearing where Ricker pointed a .22 caliber pistol at her. Ricker followed Bohanan telling her she could not leave because "they" would come and get him after she told what had happened and that he would be put away for a long time. Bohanan told him that she would not tell anyone what had happened and that she would not mention his name. Ricker handed Bohanan the gun, which was hers, and gave her back her jacket, glasses and keys. As Bohanan left, Ricker called out, "Chari, if you love me don't tell anyone."

Bohanan drove herself to the emergency room. She was treated for a shotgun blast to the back of her head and her back. She had shotgun pellets in her head, back, left shoulder, left wrist and left hand. As she was being treated in the emergency room, Bohanan told the sheriff's deputies about the events that had occurred and identified Ricker as her assailant. Ricker denied having hurt Bohanan, claiming that the blast came from behind him and that he had panicked and done some "questionable things."

At trial, Bohanan testified that prior to this incident she had told Ricker that she had made him the beneficiary on a $40,000.00 life insurance policy. Ricker also owed Bohanan $1,200.00, which she expected him to repay.

Ricker was charged by amended information as a prior and persistent offender with one count of assault in the first degree and one count of armed criminal action (Counts I and II). Ricker was also separately charged, on additional facts arising out of the same circumstances, on May 19, 1994, with one count of first degree assault and one count of armed criminal action. The State alleged that he "recklessly" caused serious physical injury to Ms. Bohanan by preventing her from seeking medical attention, by means of a deadly weapon. This charge formed the basis for Counts III and IV.

The case went to trial on November 14, 1994. The jury returned a verdict of guilty on all four counts. Ricker was sentenced to consecutive terms of twenty-five years imprisonment on Counts I and II (assault and armed criminal action) and to consecutive terms of twenty-five years imprisonment on Counts III and IV (assault and armed criminal action) to be served concurrently to the sentence in Counts I and II.

Ricker filed a *pro se* Rule 29.15 motion for post-conviction relief on August 28, 1995. An amended motion was filed by appointed counsel on November 30, 1995. The motion court dismissed Ricker's Rule 29.15 motion on the grounds that the *pro se* motion was untimely filed. Ricker appeals his conviction and from the dismissal of his post-conviction motion.

## COUNTS III AND IV

Ricker's first three points on direct appeal are related to error in regard to Counts III and IV. Ricker claims that the trial court plainly erred by failing to dismiss these counts because the trial court lacked jurisdiction because the information was fatally defective. The information, he contends, does not by any reasonable construction charge the offense of first degree assault because it alleges only that he "recklessly" caused injury, whereas the statute requires a state of mind of "knowingly" causing injury for first degree assault. He asks this court to reverse Count III, first degree assault, and Count IV, the armed criminal action count predicated upon Count III. In Points II and III of his appellate brief, Ricker claims instructional error as it relates to instructions given to the jury concerning Counts III and IV.

■ The state confesses error, and requests a remand. We agree that the wording of the charge does not effectively plead a

violation of assault in the first degree. In Count III, Ricker was charged with the class A felony of assault in the first degree in that:

> [T]he defendant under circumstances manifesting extreme indifference to the value of human life, recklessly caused serious physical injury to Charisse Bohanan by preventing her from seeking medical attention, and defendant committed this offense by means of a deadly weapon.

This language almost exactly tracks that of § 565.050.1(3), RSMo 1978, which was repealed in 1984 and replaced by the current statute, § 565.050, RSMo 1994, which provides:

> 1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.
>
> 2. Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony.

The charge upon which Ricker was tried and convicted upon did not plead that he acted "knowingly" in causing serious physical injury.

No challenge to the sufficiency of the information was made prior to the verdict. The Missouri Supreme Court in *State v. Parkhurst*, 845 S.W.2d 31, 35 (Mo. banc 1992), provides guidance in cases such as this one, stating:

> To summarize, the rule that essential statutory elements may not be supplied by intendment or implication has no application where the issue is not timely raised pursuant to Rule 24.04(b). When the issue is raised for the first time after verdict, the indictment or information will be deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced. In either event, a defendant will not be entitled to relief based on a post-verdict claim that the information or indictment is insufficient unless the defendant demonstrates actual prejudice.

The information in the instant case does not charge the crime of assault in the first degree, the crime upon which Ricker was convicted. The necessary culpable mental state is misstated in the information and, under the *Parkhurst* standard, Ricker's conviction for assault in the first degree (Count III) and the related charge of armed criminal action (Count IV) must be reversed. *See also State v. Schleiermacher*, 924 S.W.2d 269, 276 (Mo. banc 1996); *State v. Brokus*, 858 S.W.2d 298, 302 (Mo.App.1993).

## Remand on Counts III and IV

■ The state requests a remand, contending that a remand for a new trial would not violate the defendant's rights. Relying on *State v. O'Brien*, 857 S.W.2d 212 (Mo. banc 1993), the state contends that a remand for a new trial on the assault charge would not violate Ricker's rights against double jeopardy. We agree that Article I, Section 19 of the state constitution is not invoked because defendant has not been "once acquitted by a jury." *Id.* at 221. Further, it seems that the defendant's rights under the Fifth Amendment of the United States Constitution, as applied to the state through the Fourteenth Amendment, are not violated. *Id.* *O'Brien* involved a first degree murder charge. Although the jury convicted the defendant on that charge, the evidence was insufficient for a conviction of first degree. The evidence was sufficient, however, to submit the lesser included offense of second degree murder. The court held the case could be remanded for a new trial on the charge of second degree murder without violating the defendant's rights to be protected against double jeopardy. *Id.* The state suggests that this case is analogous, and authorizes a remand. Ricker fails to present any authority to the contrary. Consequently, we will remand Counts III and IV to the trial court for further proceedings.

## Other Crimes Evidence

Ricker contends that a new trial upon Counts I and II is also mandated because the trial was tainted because otherwise inadmis-

sible evidence pertaining to Counts III and IV was admitted into evidence. Ricker claims that this evidence was prejudicial to him and, absent the defective counts, he may have chosen not to testify in a trial involving only Counts I and II. Ricker specifically points to evidence of his conduct after the shooting as being tainted. He claims that this evidence has no probative value and prejudiced him in that it showed that he used bad judgment and thus had a bad character. Ricker's contention has no merit.

■■■■ An accused has the right not to be found guilty of a crime for which he is not on trial. *State v. Conley*, 873 S.W.2d 233, 236 (Mo. banc 1994). Evidence of uncharged crimes, wrongs or acts is inadmissible for the purpose of showing that a defendant has a bad character and is therefore probably guilty of the crime for which he is on trial. *Id.* However, evidence of other bad acts is sometimes admissible to establish motive, intent, a common scheme or plan, or the absence of mistake or accident. *State v. Harris*, 870 S.W.2d 798, 810 (Mo. banc), *cert. denied*, — U.S. —, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). The evidence is admissible only where the evidence is both logically and legally relevant. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). Evidence is logically relevant if it has some legitimate tendency to directly establish the guilt of the accused of the charge for which he is on trial. *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992). A "legitimate" tendency is a tendency to prove guilt which reasons about guilt on some basis other than bad character. *Id.* To be admissible the evidence must have not only legitimate probative value, but the legitimate probative value must outweigh its prejudicial effect. *Bernard*, 849 S.W.2d at 13. When the legitimate probative value outweighs the prejudicial effect, the evidence is considered "legally relevant." *Id.* The evidence challenged by Ricker in this case is both logically and legally relevant. The evidence tends to establish that Ricker's action in shooting Bohanan was not a mistake or an accident. It also tends to rebut the defense theory that the shooter was someone else. The evidence also shows the circumstances and progression of events of the offense charged. *Id.* It helps paint a complete and

intelligible picture of the events that took place. *Id.* Ricker's attempt to keep Bohanan in the woods, his refusal to seek help or let her seek help, and his pleading with her not to tell on him, are all parts of the factual scenario which the prosecution had the right to show. The entire flow of events, beginning with Ricker's threat, is admissible in order to enable the jury to comprehend the unusual events alleged in this case. The trial court did not err in admitting this evidence.

■■■■ Ricker separately challenges the trial court's action in permitting evidence of the gas leak in Bohanan's apartment into evidence, although this evidence is in the same category as that just discussed. He argues that this evidence constituted evidence of other crimes which did not bear any relevance to the issues in the case and was introduced solely to establish that Ricker had a bad character. The trial court admitted this evidence on the basis that it had a legitimate tendency to prove Ricker's guilt because it tended to show his intent to kill Bohanan. The evidence of the gas leak strongly pointed to Ricker. This evident attempt on Bohanan's life establishes intent on the part of Ricker, who denied any intent to harm Bohanan. It also tends to show that Ricker, and not someone else, was the person who shot Bohanan. The evidence was both logically and legally relevant, because the evidence was highly probative, and the probative value outweighed the prejudicial effect. *State v. Sladek*, 835 S.W.2d 308 (Mo. banc 1992). The trial court did not err in allowing testimony concerning the leak into evidence.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■■■■ Ricker claims that the trial court erred in imposing judgment and sentence upon his convictions for first degree assault and armed criminal action because he was denied effective assistance of counsel in that his trial counsel failed to file a motion to dismiss Counts III and IV and failed to object to Instructions 8 and 10. Ricker's allegation is not reviewable by this court because Ricker failed to file a timely motion

under Rule 29.15. Rule 29.15 is the exclusive procedure by which a claim of ineffective assistance of counsel upon conviction after trial can be advanced. *State v. Wheat,* 775 S.W.2d 155, 157 (Mo. banc 1989), *cert. denied,* 493 U.S. 1030, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990); *State v. Hill,* 865 S.W.2d 702, 705 (Mo.App.1993). The failure to file a timely Rule 29.15 motion constitutes a complete waiver of the right to seek relief under the Rule. *See Wheat,* 775 S.W.2d at 157.

Ricker, while recognizing that his claim of relief is not cognizable, submits that it would be more equitable for this court to follow the rule of *State v. Harvey,* 692 S.W.2d 290 (Mo. banc 1985), which holds that the court may consider claims of ineffective assistance of counsel on direct appeal where the record in the case is sufficiently developed to permit a full review on the issue. *Harvey* was decided prior to the adoption of Rule 29.15. It is no longer good law. *Wheat,* 775 S.W.2d at 157. Point denied.

■ Ricker failed to file a timely Rule 29.15 motion for post-conviction relief. He reiterates the tired argument that the time limits are unconstitutional, operating arbitrarily to deprive Ricker of due process of law because the Rule makes no provision for the late filing of a post-conviction motion for good cause. Missouri courts have repeatedly held that the time limits of Rule 29.15 are valid and mandatory. *State v. Weaver,* 912 S.W.2d 499, 520 (Mo. banc 1995); *Reuscher v. State,* 887 S.W.2d 588, 590 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1982, 131 L.Ed.2d 869 (1995). The time limits are reasonable and effective procedural requirements serving the legitimate end of avoiding delays in processing a prisoner's claims. The point is denied.

## CONCLUSION

Ricker's convictions and sentences on Counts III and IV (Case No. CR694–363F) are vacated and the case is remanded to the trial court for further proceedings in regard to these counts. The state may amend and may proceed to try Ricker on a lesser degree of assault and on any allegation of armed criminal action related thereto. The convictions and sentences on Counts I and II are affirmed. The judgment of the motion court dismissing Ricker's Rule 29.15 motion for postconviction relief is affirmed.

