STATE of Missouri, Plaintiff–Respondent,

v.

Stephen L. FINSTER, Defendant–Appellant.

Stephen L. Finster, Movant–Appellant,

v.

State of Missouri, Respondent–Respondent.

Nos. 19139, 20453.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 5, 1999.

Motion for Rehearing and Transfer Denied Jan. 27, 1999.

Application for Transfer Denied March 23, 1999.

Gary E. Brotherton, Asst. Public Defender, Columbia, Attorney for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jill C. Lahue, Asst. Atty. Gen., Jefferson City, for Respondent.

KENNETH W. SHRUM, Presiding Judge.

A jury convicted Stephen L. Finster (Defendant) of second degree murder, § 565.021.1(1),[1] and armed criminal action, § 571.015, for the fatal stabbing of a young woman. Defendant appeals those convictions in No. 19139. We affirm.

Defendant also filed a motion pursuant to Rule 29.15 claiming, among other things, ineffective assistance of counsel. A hearing was held on the motion. The motion court found that Movant's trial counsel was not ineffective and denied the motion. Movant appeals the decision of the motion court in No. 20453.[2] We affirm.

### No. 19139

Originally, Defendant's fourth point complained about the absence of a hearing transcript relating to Defendant's motion to sup-

---

1. Statutory references are to RSMo 1994 unless otherwise stated. In an earlier opinion regarding this case, *State v. Finster*, 963 S.W.2d 414 (Mo.App.1998) (*Finster I*), we inadvertently and mistakenly referred to § 556.021.1(2) as the second degree murder statute under which Defendant was convicted.

2. Defendant was sentenced before January 1, 1996, and his Rule 29.15 motion was filed September 26, 1994; consequently, Defendant's post-conviction motion is governed by Rule 29.15 (1994). Rule 29.15(*l*) (1994) mandated consolidation of the two appeals.

press statements. Defendant contended that without the transcript there could be no meaningful appellate review of his claim that violations of his constitutional rights that occurred during interrogation rendered his waiver of *Miranda* rights involuntary.[3] This court agreed, at least in part, and ordered remand for "[a] full evidentiary hearing on the *Miranda* issues concerning the written statement given by Defendant to Deputy Douglas Seneker and a determination and finding by the court whether the statement to Seneker was voluntary or involuntary." *See Finster I,* 963 S.W.2d at 418–19. Remand for another suppression hearing was deemed necessary because of Defendant's assertion that two police officers who testified at the original suppression hearing, Weter and Parks, did not testify at trial; consequently, their testimony could be crucial in appellate review of Defendant's case but was unavailable because of the non-existence of a transcript of the suppression hearing.

On remand, the trial court conducted a hearing with Defendant and counsel on both sides present. Six law enforcement people testified, Greg Brandsma, Detective Richard Weter, Lieutenant Tom Martin, Sgt. Kent Casey, Sgt. Miles Parks, and Doug Seneker, formerly a deputy and now sheriff of Lawrence County. The court found that Defendant was given his *Miranda* warnings and rights before he made his written statement to Doug Seneker. It also ruled that Defendant freely, voluntarily, and knowingly waived his *Miranda* rights and that Defendant's statement to Seneker was given voluntarily and knowingly. With those finding made, the court found that Defendant's statement to Doug Seneker should not be sup-

pressed and that Defendant's motion to suppress should be overruled.[4]

Defendant has filed a supplemental brief which, for the most part, reprises the points relied on and arguments as originally presented. The exception is Point IV, which now has multiple parts.

■ Defendant's Point IV(a) maintains that the trial court erred when it overruled the motion to suppress his statements to Seneker and in admitting the statements because the State's evidence, under the totality of the circumstances, was insufficient to support such rulings. Defendant notes that in the remand hearing it was discovered that Weter and Parks might not have testified at the original suppression hearing.[5] Such discovery contradicted Defendant's earlier claims about the participation of these witnesses. Even so, Defendant now advances a different argument. Specifically, he contends that evidence of what transpired in Weter's and Parks' interrogation of him in the one-on-one setting was essential to proving the voluntariness of his statements to Seneker. Defendant insists that without such evidence at the original hearing, the State could not have carried its burden on this issue. In essence, Defendant's position is that since Weter and Parks did not testify at the original hearing, we should conclude as a matter of law that the State's evidence at that hearing was not sufficient to prove the voluntariness of his statements to Seneker. Continuing, Defendant insists that the deficiency in evidence which thus existed at the original hearing was something that the State could not "patch up" by calling Weter and Parks at the remand hearing. As Defendant explains it: "Without accounting for

---

3. In *Miranda v. Arizona,* the United State Supreme Court set out what has become known as "the *Miranda* warning" as a means of satisfying the "procedural safeguards" required to protect an individual's privilege against self-incrimination. 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630 [66, 67], 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

4. Defendant's statements to Doug Seneker were inculpatory. For instance, he told Seneker that (a) he thought his car may have been in the area where the victim's body was found, (b) he thought something happened there to cause her death, and (c) to Defendant's "best belief" he caused "the death of [the victim]." When asked

what should happen to him for killing the victim, Defendant answered: "Death by lethal injection."

5. At the remand hearing held on June 28, 1998, Det. Weter said that he (a) did not testify at Defendant's trial, (b) believed he had testified in some proceeding but was uncertain exactly what it was, and (c) could not remember if he testified at the original suppression hearing in April 1993. During the remand hearing, when asked if he had "testified at any hearings in this case," Sgt. Parks answered: "I don't believe I have."

these two interrogations [as part of the original hearing], the State did not meet its burden of" proving voluntariness.

■■ This argument reveals an apparent misunderstanding of the law and possible misconception of the purpose for the remand hearing. Defendant argues—correctly so—that once he alleged that his inculpatory statements to Seneker were not admissible because involuntarily made, the State bore the burden of proving the voluntariness of those statements. *See Miranda*, 384 U.S. at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 694. *See also State v. Hughes*, 596 S.W.2d 723, 726[3] (Mo.banc 1980). He also argues—again, correctly so—that the voluntariness of his inculpatory statements "can only be determined by considering all of the relevant circumstances surrounding it." *See Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469[10], 25 L.Ed.2d 747, 757[9] (1970). *See also Hughes*, 596 S.W.2d at 726[2]. Defendant is wrong, however, to the extent that he claims the State had to call every officer who interrogated him in order to make a prima facie showing of voluntariness.

■ The State is not required "to negate all circumstances which might create an issue of fact concerning the voluntariness of a confession." *State v. Craig*, 642 S.W.2d 98, 101[5] (Mo.banc 1982); *State v. Harris*, 594 S.W.2d 658, 661 (Mo.App.1980). "Absent a showing of special circumstances, the state need only make a prima facie showing of voluntariness." *State v. Biddy*, 748 S.W.2d 794, 798[3] (Mo.App.1988) (citing *State v. Thomas*, 596 S.W.2d 409, 412[4] (Mo.banc 1980)). *See State v. Day*, 970 S.W.2d 406, 409 (Mo.App.1998). If a defendant contends there are special circumstances that would result in the confession being involuntary, it is incumbent on him to present evidence to support his contention. *State v. Nolan*, 423 S.W.2d 815, 818[9] (Mo.1968); *Day*, 970 S.W.2d at 409[6].

During trial of this case and again at the remand hearing there was ample evidence via Seneker's testimony to make a prima facie showing that *Miranda* requirements were met and that Defendant's incriminating statements to Seneker were voluntary and admissible. Defendant has never argued otherwise. Reduced to its essence, Defendant's argument in *Finster I* was that if any "special circumstances" existed that might negate the prima facie showing of voluntariness established by Seneker's testimony, they arose when Weter and Parks each interrogated Defendant without others present. When thoroughly analyzed, Defendant's position was that if Weter and Parks testified at the original hearing and their unpreserved testimony established as a matter of law the involuntariness of Defendant's inculpatory statements to Seneker, then his claim of trial court error in the admission of the statements could not be addressed by this court due to lack of a transcript.

To solve that problem, we remanded and ordered a new suppression hearing to give Defendant an opportunity to negate the State's prima facie showing of voluntariness by questioning Weter, Parks, and other witnesses who testified at the first suppression hearing. Defendant's problem is that on remand he was unable to elicit testimony from Weter, Parks, or other witnesses that would negate the State's showing of voluntariness. Nor does Defendant argue otherwise. Consequently, his point fails because, as we noted above, the State is not required to negate every possible circumstance that might render an inculpatory statement involuntary. *See Craig*, 642 S.W.2d at 101[5]; *Harris*, 594 S.W.2d at 661. The trial court did not err when it overruled Defendant's motion to suppress his statements to Seneker. Point IV(a) is denied.

■ Defendant's Point IV(b) makes three claims of trial court error, each of which we consider separately. Initially, Defendant claims reversible error occurred because Judge Sweeney heard the suppression hearing upon remand, rather than Judge William H. Pinnell.

In *Finster I*, we noted that Judge Pinnell "is serving as Senior Judge" and all officers who testified at the April 1993 suppression hearing may be available, thus "a supplemental hearing here is more strongly indicated than ... in *Mitchell*." 963 S.W.2d at 419 n. 4. On remand, however, Judge Sweeney heard and decided Defendant's motion to

suppress, albeit over Defendant's objection. Judge Sweeney explained why he was hearing the motion as follows: "Judge Pinnell has been hospitalized with pneumonia, hospitalized because of conditions involving the right shoulder, hip and knee and has required extensive physical therapy and is unable at this time to conduct the hearing."

Defendant relies on *State v. Davis*, 564 S.W.2d 876 (Mo.banc 1978), to argue that reversible error occurred because Judge Sweeney handled the remand hearing. In *Davis*, the trial judge became ill and was hospitalized after both sides had rested but before anything else had occurred. Another judge was assigned to complete the case. At that point, the following remained to be ruled upon: (a) a motion to suppress identification that was taken with the case; (2) a motion for judgment of acquittal at the close of all the evidence; (3) the determination of the instructions to be read to the jury; and (4) final argument. *Id.* at 877. The newly-assigned judge announced that he had reviewed trial notes of the disabled judge, had conferred with counsel " 'in a review of the testimony,' " and had reviewed the file itself so he could " 'instruct and argue.' " *Id.* The second judge then proceeded, over objection, to complete the case. On appeal, our supreme court held that reversible error occurred when the new judge was substituted in the midst of trial "after evidence has been presented but before instructions have been given and final arguments held." *Id.* at 878–79.

■ Contrary to Defendant's argument, *Davis* is too factually distinguishable to support his claim for reversal. In *Davis*, a judge who *never heard the evidence* ruled the motion to suppress identification and then presided over other aspects of the trial where knowledge of the evidence was essential. That is not this case. Here, Judges Pinnell and Sweeney each heard evidence about Defendant's inculpatory statements to Seneker in the face of *Miranda* objections and then ruled the statements admissible. It is true that such evidence was adduced in separate proceedings. Thus, Judge Pinnell's ruling came at trial, whereas Judge Sweeney's decision came after he heard evidence on Defen-

dant's motion to suppress. Yet, as noted in *Finster I*, when deciding whether to allow the introduction of a defendant's inculpatory statements over *Miranda* objections, a trial court "may base its decision on evidence heard at the suppression hearing, evidence received at trial, or both." 963 S.W.2d at 417[3]. This follows because a motion to suppress an accused's inculpatory statement "involve[s] admissibility of evidence, an issue collateral to the accused's guilt or innocence." *Id.* at 417.

The circumstances here are more akin to what happened in *State v. Tettamble*, 450 S.W.2d 191 (Mo.1970), and *State v. Chapman*, 704 S.W.2d 674 (Mo.App.1986), than to what occurred in *Davis*. *Tettamble* and *Chapman* dealt with situations where a different judge presided over sentencing than the one who tried the case. After noting that, when possible, courts should continue despite death, resignation, illness, or expiration of the term of the judge, *Tettamble* and *Chapman* found no error resulted from the substitution of judges. 450 S.W.2d at 193[2], 704 S.W.2d at 676[6]. The difference is that in *Davis* the substitute judge faced questions and had to make rulings that were dependent upon a knowledge and evaluation of trial evidence, whereas in *Tettamble* and *Chapman* all rulings and evidence in the sentencing phase were collateral to the accused's guilt or innocence.

Based on the foregoing analysis, no error resulted because Judge Sweeney heard the motion to suppress on remand. We are confirmed in our view by *State v. Bryson*, 506 S.W.2d 358 (Mo.1974), where our supreme court noted: "The hearing of pre-trial motions by a judge who does not preside at the trial itself occurs frequently in multiple-judge circuits and also occurs when a motion for change of judge is filed and granted in other circuits after the motion to suppress has been heard and decided." *Id.* at 361. Defendant's first argument under Point IV(b) is denied.

■ In another argument under Point IV(b), Defendant asserts reversible error occurred when Sgt. Parks was allowed to testify at the remand hearing but did not testify at the original suppression hearing in April

1993 or at the trial. Defendant argues this ruling "rendered [Defendant's] 1998 suppression hearing ... fundamentally unfair" as the State was thus permitted to "patch up" the "holes" in its April 1993 case by calling Sgt. Parks at the remand hearing. Continuing, he asserts that since Sgt. Parks' testimony "was never before Judge Pinnell ... [it] should not have been considered by Judge Sweeney and cannot be considered by this Court."

■ Defendant never objected to Sgt. Parks testifying at the remand hearing; consequently, Defendant's argument is reviewable for plain error only, i.e., to determine if manifest injustice or a miscarriage of justice resulted. *State v. Clemmons*, 753 S.W.2d 901, 907 (Mo.banc 1988); Rule 30.20. In reviewing for plain error, we deem it significant that it was Defendant's counsel at the Master's hearing who suggested that Sgt. Parks was a witness at the April 1993 suppression hearing and consequently, his testimony was part of the evidence unavailable for our review. Moreover, it was Defendant's counsel who urged in *Finster I* that Parks' testimony was " 'a critical portion of the totality of the circumstances that determine the voluntariness of [Defendant's] statements in the face of ... Seneker's interrogation.' " 963 S.W.2d at 417. Yet, when Parks revealed at the remand hearing that he may not have testified at the April 1993 suppression hearing, Defendant opted not to object to his additional testimony, but instead cross-examined Parks on the fact that he did not personally advise Defendant of his *Miranda* rights. Thus, Defendant tried to use Parks' testimony to his advantage and overcome the State's prima facie case by showing that *Miranda* requirements were not met.

In any evidentiary hearing or trial, strategy can account for a party not objecting to proffered testimony. *Bryson*, 506 S.W.2d at 361. Defendant cannot have it both ways, that is, he cannot complain that Parks' testimony was critical, cross-examine Parks to elicit his failure to give *Miranda* warning, and now complain on appeal that Parks should never have been allowed to testify at the remand hearing. To hold otherwise allows Defendant to sit idly by while Sgt. Parks' evidence was admitted, take his chances with Judge Sweeney on the motion to suppress, and then if he lost, bring it up for the first time on appeal as an issue that had never been presented to Judge Sweeney. "This is simply not conducive to an orderly system of justice and is not acceptable." *Id.*

Moreover, the remand hearing gave Defendant a chance he never had at trial or at the first suppression hearing to negate the State's prima facie showing of voluntariness through cross-examination of Weter and Parks. Clearly, no manifest injustice or miscarriage of justice resulted from Parks' testifying at the remand hearing. This part of Defendant's Point IV(b) is denied.

■ The third and final part of Defendant's Point IV(b) maintains that reversible error occurred when Judge Sweeney "refus[ed] to let [Defendant] testify or to admit Exhibit D at the June 1998 hearing." Defendant argues that "once Officer Parks testified, fundamental fairness required Judge Sweeney to let [Defendant] testify and to admit Exhibit D, which documents [Defendant's] alcohol abuse despite [the fact] that [Defendant] offered no evidence in April 1993." [6]

At the June 1998 remand hearing, Defendant wanted to testify even though he had not testified at the original hearing. Judge Sweeney sustained the State's objection to Defendant's testimony. In his ruling, Judge Sweeney explained that based on this court's directive, he was to determine whether the statements given by Defendant to Douglas Seneker were voluntary or involuntary based upon evidence received through witnesses who testified at the original hearing. Judge Sweeney then allowed Defendant to make the offer of proof summarized in the next paragraph.

When first contacted by policemen on March 13, 1992, Defendant had been drinking alcoholic beverages. He could not "re-

---

6. Exhibit D mentioned in Defendant's point relied on is a written report by Dr. Kenneth Burstin dated February 9, 1993, of his psychological evaluation of Defendant. At the remand hearing, Judge Sweeney denied Defendant's request to place this report in evidence.

member exactly" how many beers he had drunk but was "to some degree" intoxicated. Defendant described his mental function as "somewhat limited" but "[n]ot totally" impaired. He explained: "It's kind of like tunnel vision. I could see what was straight ahead but I may not have been seeing a lot of peripheral vision of events or things." Continuing in his offer of proof, Defendant said that in 1992 he normally wore glasses but did not have them as he was interrogated on March 13–14, 1992. Although he signed the statement written by Seneker, he did not read it before signing it. Seneker told him he was signing a report for Sheriff David Tatum.

After Defendant's offer of proof was rejected, he offered Exhibit D, a letter report dated February 9, 1993, by Kenneth J. Burstin, Ph.D., concerning his psychological examination of Defendant. Defendant argued that Exhibit D was relevant as it diagnosed Defendant "on axis one as suffering from alcohol abuse" and thus was relevant on the issue of voluntariness. Judge Sweeney sustained the State's objections to the exhibit based on lack of foundation and that it was hearsay.

Initially we note that Defendant does not address or consider in the argument part of his brief the trial court's ruling that Exhibit D was inadmissible hearsay and was offered without proper foundation. Points of error not carried forward or developed in the argument portion of a defendant's brief are deemed abandoned. *State v. Taylor,* 944 S.W.2d 925, 939[46] (Mo.banc 1997); Rule 30.06(a).

■ As to Defendant's offer to prove that he signed the statement given to Seneker without reading it, he testified to the same effect at trial. Accordingly, when Judge Pinnell admitted the statement at trial over Defendant's objection, he implicitly rejected such testimony as a basis for exclusion of the statement. As explained in *Finster I,* the decision to admit Defendant's written statement over *Miranda* objections can be based on evidence heard at the suppression hearing, at trial, or both. 963 S.W.2d at 417[3]. Thus, even if Judge Sweeney erred in not allowing Defendant to testify at the remand hearing—a question we need not and do not reach—Defendant was not prejudiced as such evidence had already been proffered and rejected at trial. In matters involving the admission of evidence, we review for prejudice, not mere error. *State v. Clements,* 849 S.W.2d 640, 645[10] (Mo.App.1993).

Likewise, Defendant cannot show that he was prejudiced by Judge Sweeney's exclusion of Defendant's testimony that he was drinking alcohol when picked up and interrogated on March 13, 1992. Defendant gave the statement to Seneker and signed it on the afternoon of March 14, 1992, more than twenty-four hours after he first went to troop D headquarters. Defendant's offer of proof does not include evidence that he was yet alcohol impaired the next morning (March 14) when Seneker advised him of his *Miranda* rights and commenced that day's interrogation. The fact that Defendant testified in detail at trial concerning the events of March 13 and 14, 1992, without a single claim of alcohol impairment confirms us in our view that no prejudice to Defendant stems from Judge Sweeney's exclusion of such evidence. Point IV(b) is denied.

We now proceed to determine the questions which remain in No. 19139.

■ Defendant's second point charges that the trial court rendered his trial counsel ineffective when it overruled his motion for a complete transcript of the suppression hearing. In this point relied on, Defendant asserts that the trial court's denial of his request for the suppression hearing transcript "forc[ed] Mr. Van Arkel to be ineffective."

In the argument part of his brief Defendant attempts to broaden his claim by saying that the denial of his request for the suppression transcript was the same as "a complete denial of counsel." Continuing, Defendant says that although he had an "attorney sitting beside him ... who was trying, as best he could, to defend against the State's case," the lawyer was forced to be ineffective. Defendant quotes from *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), as follows:

"Unless a defendant charged with a serious offense has counsel able to invoke the

procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself. When a State obtains a criminal conviction through such a trial, it is the State that unconstitutionally deprives the defendant of his liberty."

469 U.S. at 395, 105 S.Ct. at 836, 83 L.Ed.2d at 829–830. In conclusory fashion, Defendant says that because of the absence of the suppression transcript, he "did not have an attorney able to invoke the procedural and substantive safeguards that distinguish our system of justice."

■ To the extent that Defendant's claim is one of ineffective assistance of counsel, it is not cognizable on direct appeal. Rule 29.15 is the exclusive procedure by which a claim of ineffective assistance of counsel can be advanced. *State v. Wheat*, 775 S.W.2d 155, 157 (Mo.banc 1989); *State v. Armstrong*, 930 S.W.2d 449, 453 (Mo.App.1996); Rule 29.15(a).

■ Defendant obviously understood that his ineffective assistance of counsel claims must be under a Rule 29.15 proceeding. We deem this to be so since his Rule 29.15 motion alleged that his trial counsel was rendered ineffective by the lack of a suppression hearing transcript. After an evidentiary hearing at which defense counsel Van Arkel testified, the motion court found that Van Arkel was not rendered ineffective by the absence of a complete suppression hearing transcript. In his post-conviction appeal, Defendant did not challenge this finding. By failing to pursue on appeal the denial of his claim of ineffectiveness of counsel stemming from the absence of a suppression hearing transcript, Defendant has waived his right to seek relief on that basis. *See State v. Ricker*, 936 S.W.2d 167, 173[13] (Mo.App.1996).

■ To the extent that Defendant intends to argue that the trial court's failure to grant his motion for a complete transcript was the same as "a complete denial of counsel," we note that Defendant did not raise such a contention in his motion for new trial. With certain exceptions not applicable here, in a jury-tried case allegations of error to be preserved for appellate review must be included in a motion for new trial. Rule 29.11(d). Nonetheless, Defendant raises an issue involving a right guaranteed by the United States Constitution. Accordingly, we exercise our discretionary authority to examine Defendant's contention for plain error. *State v. Jackson*, 495 S.W.2d 80, 83[1] (Mo. App.1973).

This record reveals that Attorney Van Arkel fully participated in this trial at every stage and subjected the prosecution's case to meaningful adversarial testing. *Cf. State v. Harvey*, 692 S.W.2d 290, 292 (Mo.banc 1985). He vigorously cross-examined witnesses, objected to evidence, called witnesses for the defense, and made arguments to the jury. Defendant's claim that the denial of a suppression transcript equated to "a complete denial of counsel" is simply not supported by the record. Point II is denied.

■ We set forth verbatim Defendant's third point relied on:

"The trial court plainly erred when it entered its written judgment and sentence purporting to order [Defendant's] fifty year sentence for armed criminal action to run consecutively to his life sentence for second degree murder because this written order violated [Defendant's] rights to due process, *see* U.S. Const., Amends. V and XIV; Mo. Const., Art. I, § 10, and to be sentenced in person, *see* §§ 546.550 and 546.570 and Rule 29.07(b)(2). *[Defendant] appeared in person for sentencing and allocution on October 20, 1993;* however, the verbatim record of that proceeding has been 'lost or destroyed,' and since the law presumes sentences to run concurrently unless specifically stated on the record in the Defendant's presence, the written judgment to the contrary must be corrected. *If left uncorrected, this error will result in a miscarriage of justice.*" (Emphasis supplied.)

■ Fatal to this claim of trial court error is Defendant's admission in his point relied on that he "appeared in person for sentencing and allocution on October 20, 1993." Additionally, Rule 29.15 provides the exclusive procedure by which a person claiming that a conviction or sentence violates the

law and constitution of this state or federal constitution may seek relief. Rule 29.15(1). *See State v. Dooley,* 851 S.W.2d 683, 686–87 (Mo.App.1993). Accordingly, even without Defendant's admission, his claim would not be cognizable in this direct appeal. Point III is denied.

In his fifth point, Defendant contends the trial court erred in admitting State's Exhibit 92, a photograph depicting the stab wound to Victim's abdomen. Defendant argues that Exhibit 92 "did not tend to prove any material issue," and other pictures that did not display the victim's body in such a "graphic and horrifying manner" were admitted into evidence. Defendant also maintains that the photographs were cumulative, gruesome, and inflammatory.

A trial court has broad discretion to determine the admissibility of photographs. *State v. Isa,* 850 S.W.2d 876, 890[24] (Mo.banc 1993); *State v. Feltrop,* 803 S.W.2d 1, 10 (Mo.banc 1991). We will reverse a trial court's decision to admit a photograph into evidence only for abuse of discretion. *Isa,* 850 S.W.2d at 890.

In addition to the stab wound, Exhibit 92 shows a portion of the open autopsy incision. In the photograph, two hands, one holding a ruler, are depicted measuring the size of the stab wound. Exhibit 92 demonstrates the size and location of the abdominal stab wound, one of five stab wounds on Victim's body. While this photograph is gruesome to the extent that it shows the stab wound and the autopsy incision, it does not rise to the level of an "inflammatory" or "horrifying" photograph. Although autopsy photographs are often gruesome, they are admissible to show the location and nature of wounds and to assist the jury in understanding expert testimony. *State v. Smith,* 944 S.W.2d 901, 914[23] (Mo.banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 377, 139 L.Ed.2d 294 (1997).

Admission of this photograph, in addition to other photographs of the body depicting the stab wounds, was not cumulative. At trial, the State's expert witness testified that he believed that victim was stabbed in the abdomen first. He further testified that this wound was sufficient to cause death. Victim was stabbed four more times in the chest after suffering the abdominal wound, with one of the chest wounds being the probable cause of death.

We conclude that this exhibit, apart from the other exhibits, showed deliberation. The photograph demonstrated to the jury that "after inflicting this degree of injury to the victim's abdomen," Defendant continued to stab Victim in the chest "until he punctured her heart." Accordingly, this exhibit was probative of deliberation. Defendant's fifth point is denied.

In his sixth point, Defendant argues that the trial court erred in overruling his objections to the admission of soil samples from the crime scene, dirt samples from and photographs of scrapes and dirt on the underside of Defendant's car, and a strand of human hair found on a blanket that had been taken from Defendant's car. Defendant's objection to the introduction of these items of evidence at trial is couched in the terms of relevancy. Defendant preserved the relevancy objection in his motion for new trial.

Defendant insists that the soil samples and dirt and scrape evidence do not tie him to the crime scene. He further argues the human hair should not have been admitted because the fact that Victim was in his car was not disputed. Thus, he claims these items of physical evidence were irrelevant.

A trial court has broad discretion to determine the relevancy of evidence. *State v. Pagano,* 882 S.W.2d 326, 331[5] (Mo. App.1994). We will not reverse a trial court's decision regarding relevancy without a clear showing of an abuse of discretion. *Id.* at 331. For evidence to be deemed relevant, it should "logically tend to prove a fact in issue or to corroborate other relevant evidence which bears on a principal issue." *Id.* at 331[2].

With regard to the soil samples and the dirt samples from and photographs of scrapes and dirt on Defendant's car, the trial court did not abuse its discretion by admitting these into evidence. The soil in the area where Victim's body was discovered is sandy,

and the area is known as "Sandy Hill." Witnesses testified that the soil samples taken from "Sandy Hill" are rather unique and they contrast with the "black dirt" of areas surrounding "Sandy Hill." The dirt samples taken from Defendant's car were similar to the soil samples taken from the crime scene. Thus, these samples logically tended to prove that Defendant had been at the crime scene.

At trial, there was testimony that the sandy soil found at the crime scene and the samples obtained from Defendant's car are commonly both typical of soil found in the "Chesapeake Fault," an area extending over 100 miles. Despite Defendant's arguments to the contrary, this testimony pertained to the weight of the evidence, but it did not affect the relevance of the samples. The soil samples from the crime scene and the samples taken from Defendant's car were relevant.

Concerning evidence of scrapes on the underside of Defendant's car, this evidence was relevant as well. Photographs and witness descriptions of the crime scene noted rocks in the dirt road near the crime scene. The state introduced evidence of scrapes on the underside of Defendant's car. This evidence was relevant because it tended to show that Defendant had driven in an area that would produce such scrapes. The crime scene was such an area. While Defendant argues that his car was old and could have sustained scrapes in many other places, those facts influence the weight the jury would give such evidence. The evidence was relevant.

The State introduced a single human hair found on a blanket in Defendant's car. That hair was found to have characteristics similar to hair found on Victim's head. This evidence tended to show that victim was in Defendant's car.

Defendant argues that he conceded the fact that Victim was in his car. We find no stipulation to that effect in the record. Further, we agree with the State's argument that the prosecutor did not know what Defendant would say when he testified. The State was entitled to prove that Victim was in Defendant's car through evidence of the hair found in Defendant's car.

We find no abuse of discretion on the part of the trial court. Point VI is denied.

In his seventh point, Defendant contends that the trial court erred by not *sua sponte* declaring a mistrial because of questions and comments by the prosecution suggesting a "sexual interlude" between Defendant and the victim. Defendant argues that "[d]espite no evidence of any sexual contact between [the victim] and any man, let alone [Defendant]," the State endeavored to "inject enough lewd innuendo and titillating suspicion into the case to divert the jury's attention away from the lack of evidence connecting [Defendant] to the offense," thus depriving him of a fair trial. We disagree.

The record reveals no objection to the State's questions and statements at the time of trial. Defendant does not raise this issue in his motion for new trial. Thus, we can only review this point for plain error. Rule 30.20. Under a plain error review, we will only grant relief if an error "so substantially affects a defendant's rights that a manifest injustice or miscarriage of justice inexorably results if left uncorrected." *State v. Varvera*, 897 S.W.2d 198, 201[6] (Mo.App. 1995).

Defendant insists the trial court should have *sua sponte* declared a mistrial. A trial court, however, only acts *sua sponte* in exceptional circumstances. *State v. Kelley*, 953 S.W.2d 73, 89[37] (Mo.App.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1173, 140 L.Ed.2d 182 (1998). Declaring a mistrial in a criminal case is considered a drastic remedy and is only employed in highly extraordinary circumstances. *Id.* at 89[38]. The circumstances in this case do not warrant the declaration of a mistrial.

The State is entitled to argue reasonable inferences from the evidence. Evidence in this case leads to a reasonable inference that sexual activity between Victim and her attacker may have occurred.

Victim was found in the nude. Victim was at least partially nude when she was stabbed. Witness testimony indicated that Victim was sexually promiscuous. Defendant had scratches on his back. Based on this evidence, the State could have reasonably raised

the notion of a sexual encounter between Defendant and Victim. The trial court did not err by not *sua sponte* declaring a mistrial. Point VII is denied.

## No. 20453

 Movant Stephen L. Finster's sole point in the appeal of his claim for post-conviction relief (Point I in his brief) asserts that the motion court erred in not finding that Movant's trial counsel was ineffective. Specifically, Movant argues that his trial counsel was ineffective because he failed to investigate Donald O'Nesky, a.k.a. William John Little, the individual who found Victim's body and alerted police. Movant's claim of error is not preserved for appeal.

Movant's original motion for post-conviction relief contains only an allegation that trial counsel, Jon Van Arkel, was ineffective because he failed to call Mr. O'Nesky/Little and his wife Linda as witnesses. Movant's amended motion contains a similar allegation involving Van Arkel's failure to put Mr. and Mrs. O'Nesky/Little on the stand. Movant does not allege in either motion that Van Arkel was ineffective because he failed to investigate Mr. and Mrs. O'Nesky/Little.

Ineffective assistance of counsel claims raised for the first time on appeal are "procedurally barred." *State v. Shurn*, 866 S.W.2d 447, 470[79] (Mo.banc 1993); *State v. Gray*, 887 S.W.2d 369, 386[40] (Mo.banc 1994). We cannot review Movant's claim of error. Movant's point is denied.

The judgment in No. 20453 is affirmed.

PARRISH, J., concurs in separate opinion.

MONTGOMERY, J., concurs.

JOHN E. PARRISH, Judge, concurring.

I concur. In the first appeal of this case, *State v. Finster*, 963 S.W.2d 414 (Mo.App. 1998), I expressed the opinion that the rationale of *State v. Mitchell*, 611 S.W.2d 211 (Mo. banc 1981), permitted the case to be remanded for an evidentiary hearing on the motion to suppress if the witnesses who testified at the initial hearing were available. *See Finster*, 963 S.W.2d at 419 (Parrish, P.J., concurring).

The record on appeal from the hearing that occurred after the remand indicates some confusion about who testified at the first hearing, the one in which the court reporter's records cannot be found. I find no indication, however, that any witness who testified at the first suppression hearing was not available to testify at the second. For that reason, based on the rationale of Mitchell, I am compelled to concur. I feel equally compelled, however, to sound words of caution concerning the use of this procedure in cases in which, unlike in Mitchell, there was a hearing conducted before trial, the record of which, through no fault of a defendant, cannot be found. Remand under those circumstances can, in my opinion, give rise to a possibility of abuse by prosecuting officials that would thwart a defendant's right to due process of law.

My concern is that a prosecuting officer possessed with extraordinary hindsight vision might be tempted to create a record unlike that of the first hearing; that a decision on the voluntariness of a defendant's statement could be based on factors other than those that were before the court at trial. In my opinion, determination that a statement was voluntary must be based on evidence before a court at the time of trial, not on post-trial diatribe. It does not appear to me that this potential danger manifested itself in this case. For that reason I concur.